DILLMAN AND ASSOCIATES, INC., d/b/a Dillman Accounting, Plaintiff and Counterdefendant-Appellee, v. CAPITOL LEASING CO., Defendant and Counterplaintiff-Appellant.

Fourth District   No. 4—82—0152

Opinion filed November 15, 1982.

Asher O. Geisler, of Geisler, Waks & Geisler, of Decatur, for appellant.

Rosenberg, Rosenberg, Bickes, Johnson & Richardson, Chartered, of Decatur (Jeffrey D. Richardson, of counsel), for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

This case concerns the question of whether an equipment lease entered into between two business entities, under which the lessor completely disclaims all responsibility for performance of the leased equipment, is unconscionable. On April 23, 1981, plaintiff filed a complaint in the Macon County circuit court, alleging that a copying machine it had leased from defendant was not performing adequately and that the lease agreement, which completely relieved defendant of all responsibility for performance of the machine, was unconscionable. In addition to its prayer that it be relieved of its obligations under the lease because of the lease's alleged unconscionability, Dillman and Associates also requested damages stemming from the copier's alleged nonmerchantability. Defendant filed a counterclaim on August 16, 1981, in which it asked for an award of the entire balance remaining due under the lease, plus attorney fees. At the conclusion of a bench trial on January 5, 1982, the court held that the lease was unconscionable, but ruled against plaintiff on its claim for damages flowing from the copier's alleged nonmerchantability. The court also denied defendant's counterclaim.

The lease at issue is a form contract, and all portions thereof, except for the names and addresses of the parties, the description of the equipment, term of the lease, number and amount of lease payments, and the date of the lease, are preprinted. The term of the lease is five years, and the copier is to be returned to defendant at the end of that

time. The lease contains three express disclaimers of warranty. The first appears on the face of the lease, immediately below the description of the copier and reads:

"THERE ARE NO WARRANTIES, EXPRESSED OR IMPLIED OF MERCHANTABILITY, FITNESS, OR OTHERWISE WHICH EXTEND BEYOND THE ABOVE DESCRIPTION OF THE EQUIPMENT. LESSOR ASSUMES NO RESPONSIBILITY FOR PERFORMANCE OR MAINTENANCE. EQUIPMENT WILL BE INSURED BY LESSEE."

The second disclaimer, which also appears on the front of the lease, provides:

"*** Lessee acknowledges and agrees (1) that each unit is of a size, design, capacity and manufacture selected by Lessee, (2) that Lessee is satisfied that the same is suitable for its purpose, (3) that LESSOR IS NOT A MANUFACTURER THEREOF NOR A DEALER IN PROPERTY OF SUCH KIND, and (4) that LESSOR HAS NOT MADE, AND DOES NOT HEREBY MAKE, ANY REPRESENTATION OR WARRANTY OR COVENANT WITH RESPECT TO THE MERCHANTABILITY, CONDITION, QUALITY, DURABILITY OR SUITABILITY OF ANY SUCH UNIT IN ANY RESPECT OR IN CONNECTION WITH OR FOR THE PURPOSES AND USES OF LESSEE, OR ANY OTHER REPRESENTATION OR WARRANTY OR COVENANT OF ANY KIND OF CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT THERETO. *** AS BETWEEN LESSOR AND LESSEE, THE EQUIPMENT SHALL BE ACCEPTED AND LEASED BY LESSEE 'AS IS' AND IF ANY FAULTS PREVAIL LESSEE AGREES TO SETTLE ALL SUCH CLAIMS DIRECTLY WITH THE SUPPLIER AND WILL NOT ASSERT ANY SUCH CLAIMS AGAINST LESSOR OR LESSOR'S ASSIGNEE."

The third and final disclaimer, which appears on the reverse of the lease reads:

"NO REPRESENTATION REGARDING THE EQUIPMENT HEREIN LEASED HAS BEEN MADE BY CAPITOL LEASING COMPANY. LESSEE HAS SELECTED THE PROPERTY TO BE LEASED AND IT IS ORDERED BY CAPITOL LEASING COMPANY FOR THIS LESSEE AND AT LESSEE'S ENTIRE DIRECTION AND RISK."

The face of the lease also contains statements in bold capitals that the terms on the reverse of the lease constitute a part of the agree-

ment and that the lease is noncancelable. Additional salient provisions, printed on the reverse of the lease, are that the lessee is responsible for any and all taxes on the leased equipment, the lease is irrevocable, and that the lessor has no responsibility for maintenance of the equipment. In the event of problems with the equipment, the lessor is to assign to lessee its rights against the supplier of the equipment for breach of warranties for the sole purpose of enabling lessee to pursue claims against the supplier relative to such defects. Finally, in the event of breach of the lessee's obligations under the lease, the lessor may declare due the entire unpaid rental for the remaining term of the lease and repossess the leased equipment without legal process. The lessor may thereafter lease the repossessed equipment to a third party on terms of its choice or sell the equipment to the highest bidder at a public or private sale. The proceeds of the sale or second lease, less attorney fees and expenses related thereto, are to be deducted from the sum of the total unpaid lease installments, 15% of the lessor's original investment in the leased equipment (representing the lessor's loss of residual or salvage value of the equipment), and any other sums due under the lease, to arrive at the deficiency for which the lessee is responsible. The lessee is also liable for the amount of attorney fees incurred in attempting to collect a deficiency.

The plaintiff's sole witness at trial was its executive director, Ronald L. Christopher. Christopher, who began work with Dillman and Associates in July 1979, testified as to the generally unsatisfactory performance of the leased copier during the time that he had been employed there. The machine had to be repaired a total of 16 to 19 times between July 15, 1979, and December 30, 1979, and 20 service calls were necessary to keep it functioning during 1980. Although Dillman and Associates had a preventive maintenance agreement for the copier with Printing Equipment & Products, Inc., of Decatur, some of the repairs fell outside the scope of this agreement, and on four occasions plaintiff received bills of more than $100 for such repairs. During this time, plaintiff repeatedly requested that defendant replace or repair the machine, but defendant took no action in this regard. Christopher brought three briefcases full of illegible copies produced by the machine into court with him. On April 1, 1981, the machine again began to produce illegible copies. Since that is the heaviest period in plaintiff's income tax return preparation business, the machine was simply set aside and replaced with another leased copier on a temporary basis. This copier was subsequently replaced with a third machine. The third copier had required only one service call up to the time of the trial. After April 1, 1981, the plaintiff made

no further payments on the copier which it leased from defendant.

The defendant presented no evidence.

Before addressing the question of whether the lease at issue is unconscionable, we must first consider plaintiff's contention that this appeal should be dismissed on the ground of mootness. The plaintiff asserts that defendant has not perfected an appeal from the trial court's denial of its counterclaim. Therefore, plaintiff argues, the trial court's decision on defendant's counterclaim, which is now a final judgment by virtue of defendant's failure to appeal it, effectively bars defendant from ever receiving any damages on account of breach of the lease. Therefore, plaintiff asserts that the dispute before us is moot.

The written judgment entered by the trial court contains rulings on count I of plaintiff's complaint (the unconscionability claim), count II of plaintiff's complaint (the nonmerchantability claim), and defendant's counterclaim in separately numbered paragraphs. Defendant's notice of appeal states:

> "CAPITOL LEASING CO. *** hereby appeal[s] *** from the Judgment entered in favor of DILLMAN AND ASSOCIATES, INC., Plaintiff-Counter Defendant, and against Defendant-Counter Claimant, CAPITOL LEASING CO., in terminating the lease without further liability on behalf of the Plaintiff-Counter Defendant.
>
> Defendant-Counter Claimant prays that the reviewing Court reverse said Judgment and arrest Judgment in favor of the Defendant-Counter Claimant, or, in the alternative, enter Judgment in favor of the Defendant-Counter Claimant notwithstanding the verdict, or, as further alternative relief, that the reviewing Court reverse said Judgment and award to the Defendant-Counter Claimant a new trial and remand this cause for a new trial."

A notice of appeal is jurisdictional, and in order to confer jurisdiction on a court of review, the notice must adequately conform to the requirements of Supreme Court Rule 303(c)(2) (87 Ill. 2d R. 303(c)(2)) which provides, *inter alia,* that the notice "shall specify the judgment or part thereof appealed from." If errors in the notice of appeal are merely matters of form as opposed to substance, however, the jurisdiction of the appellate court will nevertheless attach. (*Department of Transportation v. Galley* (1973), 12 Ill. App. 3d 1072, 299 N.E.2d 810.) Furthermore, notices of appeal are to be liberally construed in view of the purpose of such notices, which is to advise the prevailing party in the trial court of the nature of the appeal. *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380.

The question of the scope of the notice of appeal involved in *Burtell* is similar to the question which plaintiff raises in regard to the purview of the notice of appeal in the present case. In *Burtell*, the trial court entered a decree on December 19, 1975, finding the existence of a joint venture between plaintiff and one of the defendants. The decree was but a preliminary determination necessary to the ultimate relief sought by plaintiff, which was a money judgment based on an accounting. A judgment in favor of plaintiff on the basis of the joint venture and an accounting relating thereto was entered on June 1, 1976. The defendant's notice of appeal requested only that the judgment entered on June 1, 1976, be reversed; it did not specifically request that the decree of December 19, 1975, be reversed. The court held that the notice of appeal was nevertheless applicable to the decree of December 19, 1975, since that decree was closely related to the judgment of June 1, 1976, in that it was a preliminary determination essential to the ultimate relief obtained by plaintiff as a result of the June 1 judgment.

■ In the case at bar, the defendant's right to recover on the basis of the lease agreement's acceleration clause is obviously dependent upon the conscionability of the lease agreement. Thus, in the present case, as in *Burtell*, there is a close interrelation between the issue which was admittedly appealed and the issue from which an appeal was allegedly not taken. Moreover, the language contained in the notice of appeal, that defendant appeals from the judgment of the court "in terminating the lease without further liability on behalf of the Plaintiff-Counter Defendant" clearly implies that defendant is appealing from both the termination of the lease on the ground of unconscionability and the court's refusal to hold plaintiff liable for any of the remaining payments due under the lease by denying defendant's counterclaim. This interpretation of Capitol's notice of appeal is buttressed by the repeated references to Capitol Leasing Co. as the "Defendant-Counter Claimant" which are contained in the notice. Therefore, we are of the opinion that defendant's notice of appeal was sufficient to confer jurisdiction on this court to consider defendant's counterclaim and that the notice adequately informed plaintiff that defendant was appealing from the entire judgment which the trial court entered on February 10, 1982.

■ Plaintiff further asserts that even if the question of whether defendant's counterclaim was properly denied falls within the scope of defendant's notice of appeal, defendant has waived this issue by failing to discuss it in its brief. As support for this contention, plaintiff relies primarily on Supreme Court Rule 341(e)(7) (87 Ill. 2d R.

341(e)(7)), which provides that points not argued in an appellant's brief are waived. In our opinion, however, this Rule does not provide a basis for holding that defendant waived this issue under the circumstances of this case. At trial, plaintiff presented no defenses whatsoever to defendant's counterclaim other than the lease's alleged unconscionability. Therefore, under the posture of this case at the conclusion of the trial, a holding that the lease which the parties executed is not unconscionable would mandate a decision that defendant is entitled to damages pursuant to its counterclaim. Since plaintiff's liability for the amount of defendant's counterclaim would thus automatically result from a decision that the lease is conscionable, a discussion of defendant's counterclaim in its brief was unnecessary and would, in fact, have been superfluous. Since defendant therefore did not fail to properly appeal the adverse decision on its counterclaim and was not required to discuss the propriety of the denial of its counterclaim in its brief, the issue of the unconscionability of the lease agreement into which the parties entered is not moot, and we may consider this issue on its merits.

■■ Section 2—302 of the Uniform Commercial Code provides:
"Unconscionable Contract or Clause. (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." (Ill. Rev. Stat. 1981, ch. 26, par. 2—302.)

The generally accepted definition of an unconscionable contract is one " 'which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man could accept, on the other.' [Citation.]" (*Neal v. Lacob* (1975), 31 Ill. App. 3d 137, 142, 334 N.E.2d 435, 439.) An unconscionable contract is usually improvident, wholly one-sided or oppressive. (*Neal.*) Courts are generally reluctant to use the unconscionability doctrine to rewrite the terms of contracts into which educated businessmen have entered. *Walter E. Heller & Co. v. Convalescent Home* (1977), 49 Ill. App. 3d 213, 365 N.E.2d 1285.

■ Article 2 of the Uniform Commercial Code should not be applied *in toto* to equipment leases. Relevant provisions of that article should, however, be applied by way of analogy in equipment lease cases involving the same considerations which gave rise to the Code provisions and where the analogy is not rebutted by the circumstances of the case. Under this test, article 2 has been held applicable to equipment leases of the type entered into by the parties to this action. *Heller.*

In support of its position that the lease in question is unconscionable, plaintiff relies principally on *Bank of Indiana, National Association v. Holyfield* (S.D. Miss. 1979), 476 F. Supp. 104, *United States Leasing Corp. v. Franklin Plaza Apartments, Inc.* (N.Y. Civ. Ct. 1971), 65 Misc. 2d 1082, 319 N.Y.S.2d 531, and *Hertz Commercial Leasing Corp. v. Dynatron, Inc.* (1980), 37 Conn. Supp. 7, 427 A.2d 872, all cases from other jurisdictions and not binding on us. Furthermore, in *Bank of Indiana* the parties to the lease were an unsophisticated farmer and a large corporation. The lease was completed in text and executed by the farmer when he was under great economic compulsion. In *Hertz,* the court held against the lessor on the basis it had not made a commercially reasonable sale of the leased property in mitigation of damages and because a liquidated damages claim was unconscionable. The question of whether a disclaimer of warranties was unconscionable was not reached.

As authority for its assertion that the lease executed by the parties before us is conscionable, defendant relies principally on *Heller, FMC Finance Corp. v. Murphree* (5th Cir. 1980), 632 F.2d 413 (applying Illinois law), and *Bill Stremmel Motors, Inc. v. IDS Leasing Corp.* (1973), 89 Nev. 414, 514 P.2d 654. We find *Heller* to be dispositive of this issue. In *Heller,* the defendants entered into an equipment lease with plaintiff's assignor. The lease agreement provided, *inter alia,* that the lessor made no express or implied warranties as to the leased equipment, and that defects in, or unfitness of, the equipment would not relieve defendants of their obligation to make payments under the lease. The lessor's assignee sued defendants for the amount due under the lease after defendants refused to make further payments because of the equipment's alleged inadequacy for their needs, and obtained a judgment against defendants. In rejecting defendants' contention on appeal that the lease was unconscionable, the court held that while certain provisions of the lease favored one party over another, the lease imposed rights and duties on both parties, and that corporations of substantially equal bargaining power agreed to the lease. *FMC Finance* and *Bill Stremmel Motors* both involved factual situations very

similar to that present in *Heller*, and the courts responded to the lessees' claims of unconscionability in substantially the same manner as the *Heller* court.

■■ The lease before us, was, like the lease in *Heller*, entered into by businessmen of equal sophistication. This is not the case of an experienced businessman taking unfair advantage of a poorly educated consumer. Although plaintiff was under no compulsion to lease the equipment and could presumably have purchased it either outright or through the use of conventional financing, it chose to obtain a new copying machine by leasing one for reasons which do not appear in the record. After deciding to lease a new copier, the plaintiff was free to select the machine which would best suit its needs and circumstances. Upon making its selection, the plaintiff signed a lease which contained conspicuous, and thus legally binding (see *Heller*; Ill. Rev. Stat. 1981, ch. 26, pars. 2—316(2), 1—201(10)) disclaimers of warranty in not one, but in three locations. The defendant fulfilled its contractual obligations by purchasing and delivering to plaintiff the machine which plaintiff chose. Apparently, the copier which plaintiff received was either defectively manufactured or was inadequate to handle plaintiff's volume of copying. Plaintiff now asks us to declare the lease unconscionable because it is unable to assert against the lessor claims as to the equipment's inadequacy, for which the lessor bears no responsibility whatsoever. We cannot accede to this request. Courts should not assume an overly paternalistic attitude toward the parties to a contract by relieving one or another of them of the consequences of what is at worst a bad bargain (see *Neal*), and in declaring the lease in issue here unconscionable, we would be doing exactly that.

■■ Having determined that the lease into which the parties entered was not unconscionable, we must next ascertain whether any of the evidence which plaintiff presented in support of its unconscionability claim could possibly be construed as evidence sufficient to support plaintiff's nonliability for the amount of defendant's counterclaim on grounds of the copying machine's nonmerchantability or the defendant's failure to mitigate its damages. As previously intimated, we are of the opinion that this question should be answered in the negative. First of all, the plaintiff did not present evidence of defects in the copier at the time of acquisition sufficient to sustain a claim of nonmerchantability under section 2—314(2)(c) of the Uniform Commercial Code (Ill. Rev Stat. 1981, ch. 26, par. 2—314(2)(c)), for there was no direct evidence of the machine's performance during the first five months of its use by plaintiff. (See *Burrus v. Itek Corp.* (1977), 46 Ill. App. 3d 350, 360 N.E.2d 1168.) Furthermore, the plaintiff did not es-

tablish the extent to which defendant failed to mitigate its damages resulting from plaintiff's cessation of payments under the lease. There is indeed evidence that defendant refused to reclaim the machine after plaintiff stopped making payments under the lease and that the machine remained on plaintiff's premises at the time of the trial. This is not, however, sufficient evidence to support a claim of nonmitigation, since it provides no basis for determination of the amount of the setoff to which plaintiff-counterdefendant is entitled as a result of defendant-counterplaintiff's alleged nonmitigation of its damages, and the party asserting nonmitigation of damages bears the burden of proof as to the extent of the nonmitigation. See *Williams v. Board of Education* (1977), 52 Ill. App. 3d 328, 367 N.E.2d 459.

In its counterclaim, defendant requested damages in the amount of $5,889 (representing the total amount of the lease payments), plus attorney fees in the amount of $500, less any payments made pursuant to terms of the lease. The evidence clearly establishes that the total amount due under the lease is $5,889. Therefore, we remand this cause to the trial court with directions that judgment be entered for defendant-counterplaintiff in the amount of $5,889, less all payments made by plaintiff-counterdefendant pursuant to terms of the lease.

The sole reference to the amount of defendant's attorney fees in the record before us is a statement in the trial transcript that a stipulation with respect to attorney fees may have been entered. The common law record does not, however, contain such a stipulation. Since we thus have no evidence of the amount of defendant's attorney fees before us, we further direct the trial court to hold an evidentiary hearing to determine the amount of attorney fees reasonably incurred by defendant-counterplaintiff at trial and in the prosecution of this appeal, and to enter judgment for defendant-counterplaintiff in the amount of such fees.

Reversed and remanded with directions.

TRAPP and LEWIS, JJ., concur.