12 P.3d 238

The Estate of Martha NELSON, deceased, by Copersonal Representatives Edward P. Franz and Kenneth C. Newman, Plaintiff/Appellant,

v.

Carl RICE and Anne Rice, husband and wife, Defendants/Appellees.

No. 2 CA–CV 99–0085.

Court of Appeals of Arizona, Division 2, Department B.

Oct. 31, 2000.

Mesch, Clark & Rothschild, P.C. by Douglas H. Clark, Jr., and Scott H. Gan, Tucson, Attorneys for Plaintiff/Appellant.

Joseph W. Watkins, P.C. by Joseph W. Watkins, Tucson, Attorney for Defendants/Appellees.

## OPINION

ESPINOSA, Chief Judge.

¶ 1 Plaintiff/appellant the Estate of Martha Nelson, through its copersonal representatives Edward Franz and Kenneth Newman,

appeals from a summary judgment in favor of defendants/appellees Carl and Anne Rice in the Estate's action seeking rescission or reformation of the sale of two paintings to the Rices. The Estate argues that these remedies are required because the sale was based upon a mutual mistake. The Estate also contends that enforcing the sale "contract" would be unconscionable. We affirm.

### Facts and Procedural History

¶ 2 We view the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the summary judgment. *Hill-Shafer Partnership v. Chilson Family Trust*, 165 Ariz. 469, 799 P.2d 810 (1990). After Martha Nelson died in February 1996, Newman and Franz, the copersonal representatives of her estate, employed Judith McKenzie–Larson to appraise the Estate's personal property in preparation for an estate sale. McKenzie–Larson told them that she did not appraise fine art and that, if she saw any, they would need to hire. an additional appraiser. McKenzie–Larson did not report finding any fine art, and relying on her silence and her appraisal, Newman and Franz priced and sold the Estate's personal property.

¶ 3 Responding to a newspaper advertisement, Carl Rice attended the public estate sale and paid the asking price of $60 for two oil paintings. Although Carl had bought and sold some art, he was not an educated purchaser, had never made more than $55 on any single piece, and had bought many pieces that had "turned out to be frauds, forgeries or ... to have been [created] by less popular artists." He assumed the paintings were not originals given their price and the fact that the Estate was managed by professionals, but was attracted to the subject matter of one of the paintings and the frame of the other. At home, he compared the signatures on the paintings to those in a book of artists' signatures, noticing they "appeared to be similar" to that of Martin Johnson Heade. As they had done in the past, the Rices sent pictures of the paintings to Christie's in New York, hoping they might be Heade's work. Christie's authenticated the paintings, *Magnolia Blossoms on Blue Velvet and Cherokee*

*Roses,* as paintings by Heade and offered to sell them on consignment. Christie's subsequently sold the paintings at auction for $1,072,000. After subtracting the buyer's premium and the commission, the Rices realized $911,780 from the sale.

¶ 4 Newman and Franz learned about the sale in February 1997 and thereafter sued McKenzie–Larson on behalf of the Estate, believing she was entirely responsible for the Estate's loss. The following November, they settled the lawsuit because McKenzie–Larson had no assets with which to pay damages. During 1997, the Rices paid income taxes of $337,000 on the profit from the sale of the paintings, purchased a home, created a family trust, and spent some of the funds on living expenses.

¶ 5 The Estate sued the Rices in late January 1998, alleging the sale contract should be rescinded or reformed on grounds of mutual mistake and unconscionability. In its subsequent motion for summary judgment, the Estate argued the parties were not aware the transaction had involved fine art, believing instead that the items exchanged were "relatively valueless, wall decorations." In their opposition and cross-motion, the Rices argued the Estate bore the risk of mistake, the doctrine of laches precluded reformation of the contract, and unconscionability was not a basis for rescission. The trial court concluded that, although the parties had been mistaken about the value of the paintings, the Estate bore the risk of that mistake. The court ruled the contract was not unconscionable, finding the parties had not negotiated Carl's paying the prices the Estate had set. Accordingly, the court denied the Estate's motion for summary judgment and granted the Rices' cross-motion. The Estate's motion for new trial was denied, and this appeal followed.

### Standard of Review

¶ 6 Summary judgment is proper when the evidence presented by the party opposing the motion has so little probative value, given the required burden of proof, that reasonable jurors could not agree with the opposing party's conclusions. *Orme School v. Reeves*, 166 Ariz. 301, 802 P.2d 1000

(1990). We determine *de novo* whether any genuine issues of material fact exist and whether the trial court erred in applying the law. *Construction Developers, Inc. v. City of Phoenix,* 194 Ariz. 165, 978 P.2d 650 (App. 1998); *Toy v. Katz,* 192 Ariz. 73, 961 P.2d 1021 (App.1997).

### Mutual Mistake

¶ 7 The Estate first argues that it established a mutual mistake sufficient to permit the reformation or rescission of the sale of the paintings to the Rices.[1] A party seeking to rescind a contract on the basis of mutual mistake must show by clear and convincing evidence that the agreement should be set aside. *Emmons v. Superior Court,* 192 Ariz. 509, 968 P.2d 582 (App.1998). A contract may be rescinded on the ground of a mutual mistake as to a " 'basic assumption on which both parties made the contract.' " *Renner v. Kehl,* 150 Ariz. 94, 97, 722 P.2d 262, 265 (1986), *quoting* Restatement (Second) of Contracts § 152 cmt. b (1979). Furthermore, the parties' mutual mistake must have had " 'such a material effect on the agreed exchange of performances as to upset the very bases of the contract.' " *Id., quoting* Restatement § 152 cmt. a. However, the mistake must not be one on which the party seeking relief bears the risk under the rules stated in § 154(b) of the Restatement. *Emmons*; Restatement § 152.

¶ 8 In concluding that the Estate was not entitled to rescind the sale, the trial court found that, although a mistake had existed as to the value of the paintings, the Estate bore the risk of that mistake under § 154(b) of the Restatement, citing the example in comment a. Section 154(b) states that a party bears the risk of mistake when "he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." In explaining that provision, the Washington Supreme Court stated, "In such a situation there is no

mistake. Instead, there is an awareness of uncertainty or conscious ignorance of the future." *Bennett v. Shinoda Floral, Inc.,* 108 Wash.2d 386, 739 P.2d 648, 653–54 (1987); *see also State Farm Fire & Cas. Co. v. Pacific Rent–All, Inc.,* 90 Hawai'i 315, 978 P.2d 753 (1999).

¶ 9 The Estate contends neither party bore the risk of mistake, arguing that § 154 and comment a are not applicable to these facts. In the example in comment a, the risk of mistake is allocated to the seller when the buyer discovers valuable mineral deposits on property priced and purchased as farmland. Even were we to accept the Estate's argument that this example is not analogous, comment c clearly applies here and states:

> *Conscious ignorance.* Even though the mistaken party did not agree to bear the risk, he may have been aware when he made the contract that his knowledge with respect to the facts to which the mistake relates was limited. If he was not only so aware that his knowledge was limited but undertook to perform in the face of that awareness, he bears the risk of the mistake. It is sometimes said in such a situation that, in a sense, there was not mistake but "conscious ignorance."

¶ 10 Through its personal representatives, the Estate hired two appraisers, McKenzie–Larson and an Indian art expert, to evaluate the Estate's collection of Indian art and artifacts. McKenzie–Larson specifically told Newman that she did not appraise fine art. In his deposition, Newman testified that he had not been concerned that McKenzie–Larson had no expertise in fine art, believing the Estate contained nothing of "significant value" except the house and the Indian art collection. Despite the knowledge that the Estate contained framed art other than the Indian art, and that McKenzie–Larson was not qualified to appraise fine art, the personal representatives relied on her to notify them of any fine art or whether a fine arts

---

1. Reformation is not an available remedy under these facts. It is a remedy to correct a written instrument that fails to express the terms agreed upon by the parties and "is not intended to enforce the terms of an agreement the parties never made." *Isaak v. Massachusetts Indem. Life*

*Ins. Co.,* 127 Ariz. 581, 584, 623 P.2d 11, 14 (1981); *see also Ashton Co., Inc., Contractors & Engineers v. State,* 9 Ariz.App. 564, 454 P.2d 1004 (1969) (contractor not entitled to reform contract in absence of showing it did not express parties' real agreement).

appraiser was needed. Because McKenzie–Larson did not say they needed an additional appraiser, Newman and Franz did not hire anyone qualified to appraise fine art. By relying on the opinion of someone who was admittedly unqualified to appraise fine art to determine its existence, the personal representatives consciously ignored the possibility that the Estate's assets might include fine art, thus assuming that risk. *See Klas v. Van Wagoner,* 829 P.2d 135, 141 n. 8 (Utah App.1992) (real estate buyers not entitled to rescind sale contract because they bore risk of mistake as to property's value; by hiring architects, decorators, and electricians to examine realty, but failing to have it appraised, purchasers executed sale contract knowing they "had only 'limited knowledge' with respect to the value of the home"). Accordingly, the trial court correctly found that the Estate bore the risk of mistake as to the paintings' value.[2]

■ ¶ 11 The Estate asserts that the facts here are similar to those in *Renner,* in which real estate buyers sued to rescind a contract for acreage upon which they wished to commercially grow jojoba after discovering the water supply was inadequate for that purpose. The supreme court concluded that the buyers could rescind the contract based upon mutual mistake because both the buyers and the sellers had believed there was an adequate water supply, a basic assumption underlying formation of the contract. The parties' failure to thoroughly investigate the water supply did not preclude rescission when "the risk of mistake was not allocated among the parties." 150 Ariz. at 97 n. 2, 722 P.2d at 265 n. 2. The Estate's reliance on *Renner* is unavailing because, as stated above, the Estate bore the risk of mistake based on its own conscious ignorance.[3]

■ ¶ 12 Furthermore, under Restatement § 154(c), the court may allocate the risk of mistake to one party "on the ground

that it is reasonable in the circumstances to do so." In making this determination, "the court will consider the purposes of the parties and will have recourse to its own general knowledge of human behavior in bargain transactions." Restatement § 154 cmt. d. Here, the Estate had had ample opportunity to discover what it was selling and failed to do so; instead, it ignored the possibility that the paintings were valuable and attempted to take action only after learning of their worth as a result of the efforts of the Rices. Under these circumstances, the Estate was a victim of its own folly and it was reasonable for the court to allocate to it the burden of its mistake.

### Unconscionability

■ ¶ 13 The Estate also argues that enforcement of the "contract" to sell the paintings is unconscionable. The determination of a contract's unconscionability is for the trial court as a matter of law. *Maxwell v. Fidelity Financial Services, Inc.,* 184 Ariz. 82, 907 P.2d 51 (1995). We review that ruling *de novo. Samaritan Health Sys. v. Superior Court,* 194 Ariz. 284, 981 P.2d 584 (App.1998). " 'Unconscionability includes both procedural unconscionability, i.e., something wrong in the bargaining process, and substantive unconscionability, i.e., the contract terms per se.' " *Phoenix Baptist Hosp. & Medical Ctr., Inc. v. Aiken,* 179 Ariz. 289, 293, 877 P.2d 1345, 1349 (App.1994), *quoting Pacific Am. Leasing Corp. v. S.P.E. Bldg. Sys.,* 152 Ariz. 96, 103, 730 P.2d 273, 280 (App.1986).

■ ¶ 14 Citing *Maxwell,* the Estate contends this is a case of substantive unconscionability, which concerns the actual terms of the contract and the relative fairness of the parties' obligations. Indicia of substantive unconscionability include one-sided terms that oppress or unfairly surprise an

---

2. In view of our conclusion that the Estate bore the risk of any mistake in the paintings' value, we need not address the remainder of its mutual mistake arguments.

3. In its reply brief, the Estate argues that a party's negligence does not bar avoidance or reformation of a contract for mutual mistake,

claiming that § 157 of the Restatement requires bad faith or gross negligence. This argument is waived by the Estate's failure to raise it in its opening brief. *General Motors Corp. v. Arizona Dep't of Revenue,* 189 Ariz. 86, 938 P.2d 481 (App.1996); *Wasserman v. Low,* 143 Ariz. 4, 691 P.2d 716 (App.1984).

**568**

innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity. *Maxwell.* Unconscionability is determined as of the time the parties entered into the contract. *See id.*; *cf.* A.R.S. § 47–2302.

¶ 15 In refusing to rescind the sale on the basis of unconscionability, the trial court stated that, "[w]hile the results of the transaction may seem unconscionable to the [Estate] in hindsight, the terms of the contract certainly were not." We agree. The transaction involved no negotiation, the Estate dictated the terms of the contract by naming a price for each painting, and Carl paid the asking prices. " 'Courts should not assume an overly paternalistic attitude toward the parties to a contract by relieving one or another of them of the consequences of what is at worst a bad bargain ... and in declaring the [contract] at issue here unconscionable, we would be doing exactly that.' " *Pacific Am. Leasing,* 152 Ariz. at 103, 730 P.2d at 280, *quoting Dillman and Assocs., Inc. v. Capitol Leasing Co.,* 110 Ill.App.3d 335, 66 Ill.Dec. 39, 442 N.E.2d 311, 317 (1982). *See also State ex rel. State Highway & Transp. Dep't v. Garley,* 111 N.M. 383, 806 P.2d 32 (1991); *Park Valley Corp. v. Bagley,* 635 P.2d 65 (Utah 1981).

¶ 16 Affirmed. In our discretion, we deny the Rices' request for attorney's fees on appeal.

CONCURRING: JOSEPH W. HOWARD, Presiding Judge, and WILLIAM E. DRUKE, Judge.

