IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

VEREIT REAL ESTATE, LP, et al., *Plaintiffs/Appellees,*

*v.*

FITNESS INTERNATIONAL, LLC, *Defendant/Appellant.*

No. 1 CA-CV 22-0402
FILED 4-11-2023

Appeal from the Superior Court in Maricopa County
No.  CV2020-016464
The Honorable Timothy J. Thomason, Judge

**AFFIRMED**

COUNSEL

Titus Brueckner Spitler & Shelts PLC, Scottsdale
By Bradley S. Shelts, Casey O. Miller
*Co-Counsel for Defendant/Appellant*

Klehr Harrison Harvey Branzburg LLP, Philadelphia, Pennsylvania
By A. Grant Phelan
*Co-Counsel for Defendant/Appellant*

Ballard Spahr LLP, Phoenix
By Craig Solomon Ganz, Katherine E. Anderson Sanchez, Mitchell
Turbenson
*Counsel for Plaintiffs/Appellees*

---

**OPINION**

Presiding Judge Samuel A. Thumma delivered the opinion of the Court, in which Judge Cynthia J. Bailey and Vice Chief Judge David B. Gass joined.

---

**T H U M M A**, Judge:

¶1 This appeal addresses whether defendant Fitness International, LLC (Tenant) is excused from making rent and other payments to its landlords under long-term commercial leases when the State of Arizona restricted use of the properties because of the COVID-19 pandemic. Because the applicable force majeure provisions and common law doctrines, notably the frustration of purpose doctrine, relied on by Tenant do not excuse those payment obligations, the grant of summary judgment for plaintiffs is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2 Tenant operates hundreds of fitness centers worldwide, three of which are at issue here. The properties Tenant leases in Avondale and Marana are owned by plaintiff VEREIT Real Estate, LP, and are governed by 15-year commercial leases entered in 2004 and 2011 respectively. The property Tenant leases in Glendale is owned by plaintiff Cole LA Glendale AZ, LLC, and was governed by a long-term commercial lease from 2009 to September 30, 2020. Plaintiffs VEREIT and Cole (collectively, Landlords) became assignees of the leases after they purchased the properties.

¶3 The three commercial leases are comprehensive. They each are about 45 pages long, with nearly identical relevant terms, and are governed by Arizona law. Under the leases, in return for use of the premises, Tenant had to pay rent and other charges. The landlord-tenant relationship appears to have continued without significant strife before the COVID-19 pandemic.

¶4 On March 17, 2020, Tenant notified Landlords that it had closed its North American fitness centers because of COVID. That written notice stated Tenant viewed its payment obligations under the leases as excused, citing various theories, and asked Landlords to excuse those payments. The record does not contain any written response by Landlords. On March 20, 2020, Arizona Governor Doug Ducey ordered that all indoor

gyms and fitness clubs be closed to the public because of COVID. That closure continued through May 17, 2020, and after a brief suspension, from June 29, 2020 through August 26, 2020. After that time, occupancy was limited until early March 2021. Tenant did not make lease payments for April, May, June and August 2020, totaling more than $900,000.

¶5 After making written payment demands, Landlords filed this action for payment. Tenant's answer claimed many affirmative defenses, including that the force majeure provision in the Marana lease excused its payment obligations for that property, as well as frustration of purpose, impracticability and impossibility. After some discovery, Landlords moved for summary judgment, arguing Tenant's affirmative defenses did not apply. Along with opposing Landlords' motion, Tenant cross-moved for partial summary judgment, arguing the force majeure provision of the Marana lease excused Tenant's payment obligations for that property. Tenant argued that "[it] is entitled to summary judgment as a matter of law under the Marana Lease and no additional facts can alter this outcome."

¶6 After full briefing and oral argument, the superior court concluded that Tenant's affirmative defenses were inapplicable, Landlords had shown no genuine dispute as to any material fact and Landlords were entitled to judgment as a matter of law. The court granted Landlords' motion for summary judgment and denied Tenant's partial cross-motion for summary judgment. After entry of final judgment, Ariz. R. Civ. P. 54(c) (2023),[1] Tenant timely appealed. This court has appellate jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶7 This court reviews de novo the grant of summary judgment, "viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion," *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003), to determine "whether any genuine issues of material fact exist," *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, 55 ¶ 8 (App. 2007). This court will affirm the grant of summary judgment if it is correct for any reason. *Hawkins v. State*, 183 Ariz. 100, 103 (App. 1995) (citation omitted). The court reviews Tenant's various arguments in turn, at times consolidating the arguments it makes.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

I.      **The Force Majeure Provisions Did Not Excuse Tenant's Payment Obligations.**

¶8      The Avondale and Glendale leases contain the following force majeure provisions:

> If either party is delayed or hindered in or prevented from the performance of any act required hereunder because of governmental delays, strikes, lockouts, inability to procure labor or materials, failure of power, lack of availability of primary utility service, restrictive laws, riots, insurrection, war, acts of terrorism, fire, severe inclement weather such as snow or ice or other casualty or other reason of a similar or dissimilar nature beyond the reasonable control of the party delayed, financial inability excepted (any "Force Majeure Event"), performance of such act shall be excused for the period of the Force Majeure Event, provided, however, the party so delayed or prevented from performing shall diligently proceed to make good faith efforts to remedy the cause of delay and to resume performance. Delays or failures to perform resulting from lack of funds or which can be cured by the payment of money shall not be Force Majeure Events. ***Nothing in this Section shall excuse Tenant from the prompt payment of any rental or other charges required of Tenant hereunder.***

¶9      The Marana lease contains a nearly identical provision, but does not include the highlighted sentence that is included in the Avondale and Glendale leases. Tenant concedes that the force majeure provision in the Avondale and Glendale leases does not excuse its payment obligations. Tenant argues, however, that the force majeure provision in the Marana lease did excuse its payment obligations for that property. No Arizona appellate decision addresses the effect of a force majeure provision, with four decisions only mentioning the phrase. *See Russo v. Barger*, 239 Ariz. 100, 102 ¶ 6 (App. 2016) (mentioning a purported translation of a force majeure ruling by a Mexican court); *Tech. Constr., Inc. v. City of Kingman*, 229 Ariz. 564, 567 ¶ 7 (App. 2012) ("'The Court further notes that this Agreement does not contain a force majeure clause.'") (quoting superior court's ruling);

*Stuart v. City of Scottsdale*, 1 CA-CV 18-0154, 2020 WL 7230239 at *1–2 ¶ 7 (Ariz. App. Dec. 8, 2020) (mem. dec.) (quoting an amendment to a contract that included a force majeure provision); *Austin Ranch, L.L.C. v. West Surprise Landowners Grp., L.L.C.*, 1 CA-CV 08-0837, 2010 WL 363830 at *6 ¶19–21 (Ariz. App. Feb 2, 2010) (mem. dec.) (finding arbitrator exceeded their authority by, among other things, rewriting an agreement to include a force majeure provision).

¶10        In general, a force majeure provision allows contracting parties to allocate the risk of unforeseeable events beyond their control. "Force majeure clauses in commercial contracts are designed to excuse parties from performance of a contract when an unforeseeable event beyond their control has frustrated the parties' contractual purpose, made it impossible for one or both of the parties to perform or made it impracticable to do so." Lisa C. Thompson, 11 Ariz. Legal Forms, Bus. Org. LLC & Part. § 14:17.50 (4th ed. 2022). "[F]orce majeure clauses may bar some common law defenses to performance so care must be taken in considering the use and language in a force majeure clause as it will control." *Id.* A force majeure defense can only apply when a contract contains a force majeure provision; force majeure is not a common law defense applicable when a contract lacks a force majeure provision. *See, e.g.*, Robert W. Emerson & Zachary R. Hunt, *Franchisees, Consumers, and Employees: Choice and Arbitration*, 13 Wm. & Mary Bus. L. Rev. 487, 559 & n. 600 (2022) ("There is no right to force majeure protection in common law; such provisions are creations of contract and are thus considered on their own precise terms;" adding "[i]f no force majeure clause exists, either party might be able to invoke the common law doctrine of frustration.") (citation omitted). Courts typically use general contract interpretation rules when applying force majeure provisions. *See InterPetrol Bermuda Ltd. v. Kaiser Aluminum Int'l Corp.*, 719 F.2d 992, 998–99 (9th Cir. 1983).

¶11        Under Arizona law, "the interpretation of a contract is a question of law, which this court reviews de novo." *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593 ¶ 9 (App. 2009). "A general principle of contract law is that when parties bind themselves by a lawful contract[,] the terms of which are clear and unambiguous, a court must give effect to the contract as written." *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, 86 ¶ 12 (App. 2006) (citations omitted). These common law contract interpretation rules drive the analysis here.

¶12        The force majeure provision of the Marana lease states that "delays or failures to perform resulting from lack of funds or which can be cured by the payment of money shall not be Force Majeure Events."

Landlords argue that this sentence means the force majeure provision does not excuse Tenant's missed payments because those obligations could be cured by the payment of money. Tenant argues that this sentence does not apply to such payments, because it "is simply stating what shall not be a Force Majeure Event under the Lease[] -- financial distress or something that can be cured by paying money." Contrary to Tenant's argument, however, the phrases "lack of funds" and "payment of money" modify "[d]elays or failures." Thus, under the provision, specified "[d]elays or failures" -- those "resulting from lack of funds or which can be cured by the payment of money" -- are *not* Force Majeure Events.

¶13        Each party argues that the plain language of the provision provides the answer. "Force Majeure Events" is a defined term, and such an event must cause the delay, hindrance or prevention of the performance of an act otherwise required by the lease. The first sentence of the force majeure provision quoted above states that the "act" required by the lease must be "delayed or hindered in or prevented from" being performed "because of" a Force Majeure Event, not that the "act" required by the lease is a Force Majeure Event itself. For example, "inclement weather" might delay one party from performing an act required by the lease and, in that event, because the required act was "delayed . . . because of" a Force Majeure Event, the provision could excuse the performance of the required act. The delay, hinderance or prevention, however, is not a Force Majeure Event itself. Instead, a delay, hindrance or prevention is caused by (or the result or consequence of) the Force Majeure Event. Tenant has not shown why this court should depart from the plain meaning and amend the provision to provide otherwise. *See Emps. Mut. Cas. Co. v. DGG & CAR, Inc.*, 218 Ariz. 262, 267 ¶ 24 (2008) ("When the provisions of the contract are plain and unambiguous upon their face . . . the court will not pervert or do violence to the language used") (citation omitted).

¶14        Taking a broader look, and recognizing that "Force Majeure Events" is a defined term, the provision generally provides that delays, hindrances and preventions of a required act "because of" Force Majeure Events can excuse performance of that required act. But the last sentence of the provision in the Marana lease (starting with "Delays or failures . . .") provides an exception to that general rule. As the superior court held, the sentence provides that Force Majeure Events do not *excuse* delays or failures that can be cured by the payment of money. Because the failure to make lease payments can be cured by the payment of money, it is not excused by the Force Majeure Event, here the restrictive laws that required the gyms to close. Thus, the court did not err in concluding the force majeure provision of the Marana lease did not excuse Tenant's payments.

¶15        In addressing the "Nothing in this Section . . ." sentence that is not included in the Marana lease, the superior court concluded the lack of that language did not mean "that lease should be construed differently than the Avondale and the Glendale leases." Instead, the court noted the additional sentence in the other leases was a "belt and suspenders" approach. Tenant argues the court erred in reaching that conclusion because Landlords "never took the position and never presented evidence that the 'nothing in this Section' provision was just 'belt and suspenders.'" In pressing this argument, Tenant misconstrues both Landlords' arguments and the court's ruling.

¶16        Citing Landlords' reply to support their motion for summary judgment, Tenant asserts that "Landlords did not argue that the force majeure provision alone did not excuse payment of rent under the Marana Lease." But Landlords argued that the force majeure provision -- stating that "failures to perform . . . which can be cured by the payment of money" are not Force Majeure Events -- meant that Tenant's "failure to pay amounts owed under the Leases can be cured by the payment of money and, thus, the force majeure provisions do not apply." The superior court agreed, stating that "the language that 'failures to perform . . . which can be cured by the payment of money shall not be Force Majeure Events' demonstrates an intention that payment of rent was not excused by any 'restrictive laws,'" contrary to Tenant's arguments. Thus, the court's ruling responded to, and accounted for, the parties' arguments.

¶17        The cases cited by Tenant to argue that the superior court's ruling "was entirely improper" because it did not track the parties' arguments do not apply. The unpublished decision in *Bessler v. City of Tempe* granted a motion for reconsideration when both parties agreed that they had not argued a theory the court relied on. *See* CV-19-04610-PHX-MTL, 2021 WL 4122247 at *3 (D. Ariz. Sept. 9, 2021) (mem. dec.). And the other case cited by Tenant in arguing error, construed a federal local rule that does not apply. *See Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 583 (D. Ariz. 2003). Here, the superior court explained its reasoning and why it disagreed with Tenant's argument. In doing so, the court was not improperly adopting an undisclosed theory. In raising the argument that the other two leases provide context to the third lease, Tenant has not shown the court erred or acted improperly in rejecting that argument. Tenant has thus shown no error, reversible or otherwise.

¶18        Tenant has not shown that the force majeure provision in the Marana lease allowed it to suspend payments. Tenant has not shown that it was "delayed or hindered in or prevented from" paying the required

amounts under that lease. The act that Tenant seeks to be excused from is payment under that lease. Based on the plain language of the lease, payment would be excused only if Tenant could show that it was "delayed, hindered in or prevented from" performing that act. Tenant made no such showing. To the contrary, in responding to discovery, Tenant declared that it "has not claimed any financial inability to pay rent during the closure periods due to the government mandated closures**."** Tenant also objected to producing any financial information, asserting such documents and information were irrelevant.

**¶19** Finally, Tenant argues that the relevant performance is not the obligation to pay but, instead, is "[Tenant's] right to operate the Premises." Tenant contends that, because it was hindered in the performance of this right, its obligations to make payments under the lease are excused. But under the lease terms, only the act delayed, hindered or prevented from being performed is excused. To conclude otherwise would impermissibly modify the lease by "add[ing] something to the contract which the parties have not put there." *Emps. Mut. Cas. Co.*, 218 Ariz. at 267 ¶ 24 (citation omitted). Tenant has shown no error in the court concluding the force majeure provision in the Marana lease did not excuse Tenant from its payment obligations.

## II. Frustration of Purpose Did Not Excuse Tenant's Payment Obligations.

**¶20** Apart from the force majeure provision, Tenant argues its payment obligations were suspended or terminated by the frustration of purpose doctrine. Generally, "frustration of purpose deals with 'the problem that arises when a change in circumstances makes one party's performance virtually worthless to the other.'" *7200 Scottsdale Rd. Gen. Partners v. Kuhn Farm Mach., Inc.*, 184 Ariz. 341, 345 (App. 1995) (quoting RESTATEMENT (SECOND) OF CONTRACTS (RESTATEMENT) § 265 (1981)). Frustration of purpose "is, in appropriate circumstances, a justification for nonperformance of a contract and is recognized in Arizona." *Mobile Home Ests., Inc. v. Levitt Mobile Home Sys., Inc.*, 118 Ariz. 219, 222 (1978). To establish frustration of performance, a party must show

> First, "the purpose that is frustrated must have been a principal purpose of that party" and must have been so to the understanding of both parties. Second, "the frustration must be substantial . . .; [it] must be so severe that it is not to be regarded as within the risks assumed .

. . under the contract." Third, "the non-occurrence of the frustrating event must have been a basic assumption. . . . ." Finally, relief will not be granted if it may be inferred from either the language of the contract or the circumstances that the risk of the frustrating occurrence, or the loss caused thereby, should properly be placed on the party seeking relief.

*7200 Scottsdale Rd. Gen. Partners*, 184 Ariz. at 348 (quoting and citing RESTATEMENT §§ 261 cmt. b & c and 265 cmt. a & b). To be "substantial," the "value of the counter-performance to be rendered by the promisee must be totally or nearly totally destroyed." *Id.* at 349 (citation omitted).

### A. Tenant Waived Its Temporary Frustration of Purpose Argument.

¶21        Tenant argues that this court should adopt temporary frustration of purpose and apply it here. Although not yet recognized in Arizona, the RESTATEMENT provides that "frustration of purpose may be only temporary," yielding a suspension (not termination) of contract obligations. *See* RESTATEMENT § 269 cmt. a. This case provides no reason for this court to decide whether to adopt temporary frustration of purpose.

¶22        As an alternative basis for its ruling, the superior court stated that "[e]ven if [it] were to entertain [Tenant]'s invitation to adopt a 'temporary frustration' rule, the obligation to pay rent would only be 'suspended' while the frustration existed." Because the alleged temporary frustration of purpose occurred in 2020, the court continued, "there has been ample time for [Tenant] to pay the payments it did not pay in 2020." Tenant, however, had failed to make those payments.

¶23        Although Tenant argues that the COVID-based restrictions were a temporary frustration of purpose, it does not challenge in its opening brief the court's conclusion that its rental obligations would only be "suspended" –- not discharged altogether -- while the temporary frustration of purpose existed. Thus, Tenant waived the issue. *See Robert Schalkenbach Found. v. Lincoln Found., Inc.*, 208 Ariz. 176, 180 ¶ 17 (2004). In its reply, Tenant tries to raise the issue, arguing that "suspended" did not mean that "the rent obligation for the Closure Periods merely deferred to a later date." By not raising this argument in its opening brief, however, it is waived. *See Nelson v. Rice*, 198 Ariz. 563, 567 ¶ 11 n.3 (App. 2000).

### B. Complete Frustration of Purpose Did Not Excuse Tenant's Payment Obligations.

¶24 At oral argument in this court, Tenant conceded that it was not seeking relief under RESTATEMENT § 265, which defines complete frustration of purpose. Even absent that concession, Tenant could not prevail on a complete frustration of purpose theory. Tenant has not shown that a four-month restriction imposed on 15-year commercial leases constitutes such a substantial frustration of purpose that the resulting value of leasing the premises is "totally or nearly totally destroyed." *7200 Scottsdale Rd. Gen. Partners*, 184 Ariz. at 349; *see also 9795 Perry Highway Mgmt., LLC v. Bernard*, 273 A.3d 1098, 1106–07 (Pa. Super. Ct. 2022) (78-day closure during a six-year lease was not a substantial frustration that would allow the frustration of purpose doctrine to excuse performance).

¶25 Both complete and temporary frustration of purpose also fail because "the language of the contract" allocated the risk to Tenant when restrictive laws limited performance. *7200 Scottsdale Rd. Gen. Partners*, 184 Ariz. at 348. Under the doctrine of frustration of purpose, performance is excused only if the risk of loss was not "placed on the party seeking relief." *Id.* Both the Avondale and Glendale leases have explicit clauses stating that "[n]othing in this [force majeure provision] shall excuse Tenant from the prompt payment of any rental or other charges required of Tenant hereunder." As explained above, the Marana lease requires Tenant to pay rent even during force majeure events. These clauses provide that Tenant bears the risk of loss and is still required to make lease payments during such events. *See* Lisa C. Thompson, 11 ARIZ. LEGAL FORMS, BUS. ORG. LLC & PART. § 14:17.50 (4th ed. 2022). Because Tenant bears the risk of loss under the lease provisions, its performance cannot be excused under the doctrine of frustration of purpose. *See 7200 Scottsdale Rd. Gen. Partners*, 184 Ariz. at 348.

## III. Tenant Waived Any Failure of Consideration Argument.

¶26 In the superior court, Landlords argued they provided sufficient consideration and Tenant did not dispute that argument. Tenant has thus waived any failure of consideration argument. *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535 ¶ 18 (App. 2007). Even absent waiver, Tenant has not shown there was a failure of consideration when it received access to and used each of the properties for years before any COVID-related restrictions and after those restrictions were lifted.

### IV. Tenant Has Not Shown that Performance of Its Obligations Was Impracticable.

¶27        Tenant argues that the superior court erred in rejecting its impossibility and impracticability arguments. Arizona and the RESTATEMENT treat these concepts as the single defense of impracticality of performance. *See 7200 Scottsdale Rd. Gen. Partners*, 184 Ariz. at 345 n.2; RESTATEMENT § 261 cmt. d. Unlike frustration of purpose, which requires a showing that the counterparty's performance has become worthless, impracticability requires a party to show a substantial impediment to their performance. *7200 Scottsdale Rd. Gen. Partners*, 184 Ariz. at 345. The RESTATEMENT approach, adopted in Arizona, provides that "[w]here, after a contract is made, a party's performance is made impracticable . . . his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." *See* RESTATEMENT § 261; *7200 Scottsdale Rd. Gen. Partners*, 184 Ariz. at 345. "Performance may be impracticable because extreme and unreasonable difficulty, expense, injury, or loss to one of the parties will be involved." RESTATEMENT § 261 cmt. d. The RESTATEMENT recognizes temporary impracticability, *see id.* § 269, but that limited aspect of the doctrine has not yet been adopted in Arizona.

¶28        At oral argument in this court, Tenant conceded that it was not arguing complete impracticability under RESTATEMENT § 261. On the record presented, Tenant has not shown its payments were impracticable, under either a complete or temporary impracticability theory. When the relevant duty is to pay an amount specified in the contract, the party seeking the doctrine's protection must show the impracticality of making that payment. *7200 Scottsdale Rd. Gen. Partners*, 184 Ariz. at 345–46. As discussed above, Tenant has not shown that making the payment was impracticable. Tenant argues that performance was impracticable because the COVID restrictions caused an "excessive and unwarranted financial burden." But, as discussed above, Tenant provided no evidence supporting that argument, objected to providing its financial information during discovery and argued such information was irrelevant. On this record, Tenant has shown no error in the superior court addressing impracticability. *See id.*

### V. Tenant Has Not Shown a Breach of the Covenants and Warranties.

¶29        Tenant argues that rent was excused, claiming Landlords committed the first material breaches of express covenants and warranties in the leases. Section 2.2(b) of each lease states that "Landlord shall have good and insurable title . . . free and clear of all tenancies, covenants,

conditions, restrictions, encumbrances . . . which might in any manner to any extent prevent or adversely affect the use of the Premises by Tenant." Tenant, however, has shown no breach of these provisions. Although, as Tenant argues, the restrictive laws did affect Tenant's use of the property, Tenant has not shown that such restriction resulted from a defect in Landlords' title. Nor do Tenant's arguments about other paragraphs in that section expand the language of Section 2.2(b) beyond Landlords' requirement to have good and insurable title. And Tenant has not shown Landlords did not continuously have good and insurable title in compliance with these provisions.

¶30      Next Tenant argues that rent was excused based on Landlords' failure to provide quiet enjoyment, violating the express terms of the lease and the common law. Section 22.1 of each lease states that "Tenant shall quietly enjoy the Building for the Term without hindrance or interruption by Landlord or any other person or persons lawfully or equitably claiming by, through or under Landlord, subject to the terms of this Lease." Tenants' arguments fail because both the covenant in Section 22.1 and the common law covenant require acts by Landlords or someone acting on behalf of Landlords that prevent the quiet enjoyment of the land. *See Thompson v. Harris*, 9 Ariz. App. 341, 345 (1969) ("a covenant of quiet enjoyment . . . does not extend to acts of other tenants or third parties unless such acts are performed on behalf of the landlord or by one claiming paramount title"). Tenant has failed to show the COVID-related restrictions imposed by Arizona's Governor were done by Landlords or someone acting on the Landlords' behalf or claiming paramount title.

¶31      Finally, citing Section 1.9, entitled "Initial Uses" or "Primary Uses," Tenant argues that Landlords breached the express guarantee that "Tenant shall have the right throughout the Term to operate the Building, or any portion thereof, for uses permitted under this Lease." The leases, however, document the rights and responsibilities of Landlords and Tenant about uses Landlords would allow for the properties. Although Section 1.9 specifies those authorized uses, it does not guarantee that Tenant could use the properties for those purposes. For example, the leases provide that Tenant must meet the licensing requirements to operate its business. If Tenant failed to do so and could not operate as a fitness center, it could not bring claims against Landlords because of that restriction. Additionally, as Landlords noted at oral argument in this court, Section 8.2 allows Tenant to "change the use of the building to any alternate legal use" not otherwise restricted. Thus, Tenant has not shown Landlords breached the permissible uses provisions of the leases.

## VI. Tenant Has Shown No Error in the Superior Court's Consideration of Their Affirmative Defenses.

¶32 Tenant argues that Landlords did not show a lack of evidence supporting Tenant's affirmative defenses necessary to prevail on a motion for summary judgment. *See Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 119 ¶28 (App. 2008). Although not required to disprove each affirmative defense, a party moving for summary judgment is "required to 'point out,' by referring to evidence in the record, that insufficient evidence existed to support the [non-moving party's] affirmative defenses." *Id.* at 119 ¶ 29.

¶33 Tenant's answer contains 11 pages of "affirmative defenses" spanning 62 paragraphs. *Cf.* Ariz. R. Civ. P. 8(d). In their motion for summary judgment, Landlords addressed force majeure, impracticability, impossibility, frustration of purpose, failure of consideration, condemnation and breach of covenants. Landlords then explained that Tenant's other affirmative defenses were just "rephrasings of the above-discussed affirmative defenses." In doing so, Landlords attached Tenant's interrogatory responses, explaining that the bases for the other affirmative defenses were the same ones raised and addressed in Landlords' motion.

¶34 On appeal, Tenant has not shown that other affirmative defenses were not rephrasing the affirmative defenses Landlords addressed in seeking summary judgment. Tenant did not specify which affirmative defenses it alleges were not addressed when responding to the motion in superior court. Nor has Tenant done so on appeal. Thus, any such argument is waived. *See In re Aubuchon*, 233 Ariz. 62, 64–65 ¶ 6 (2013) ("We are not required to look for the proverbial 'needle in the haystack.' . . . [A]rguments not supported by adequate explanation [are waived].") (citations omitted).

## VII. Caselaw from Other Jurisdictions Is Not Binding.

¶35 The parties cite and provide supplemental citations to many recent conflicting, non-binding, unpublished trial court decisions from other jurisdictions interpreting similar contractual provisions under the local law in those jurisdictions.[2] The parties, however, have not shown how

---

[2] *See, e.g.*, *VEREIT Real Est., L.P. et al. v. Fitness Int'l, LLC*, No. DC-20-18444 (14th Jud. Dist. Ct., Dallas Cnty., Tex., Aug. 8, 2022); *Fitness Int'l, LLC v. VEREIT Real Est., L.P.*, No. 2020-027207-CA-01 (11th Jud. Cir. Ct., Miami-Dade Cnty., Fla, June 8, 2022); *ROIC Four Corner Square, LLC v. Fitness Int'l, LLC*, No. 21-2-04531-8 (Wash. Super. Ct., Oct. 8, 2021); *BAI Century LLC v.*

citation to these trial court decisions would be allowed in the issuing jurisdictions, meaning they have not shown how they are properly cited here. *See* Ariz. Sup. Ct. R. 111(d). Recognizing that the cases offer no consensus and, instead, show conflicting outcomes, this court interprets the leases here under Arizona law.

**¶36**        Landlords, however, cite two recent published appellate decisions addressing similar issues that track the analysis in this opinion. *See Fitness Int'l, LLC v. Nat'l Retail Props., LP*, --- P.3d --- 2023 WL 2132749 (Wash. Ct. App. Feb. 21, 2023); *SVAP III Poway Crossings, LLC v. Fitness Int'l, LLC*, 303 Cal.Rptr.3d 863, 866, 87 Cal.App.5th 882 (Jan. 20, 2023). Although not binding, the analysis in these opinions is instructive, as *Poway Crossings* shows.

**¶37**        In *Poway Crossings*, the California Court of Appeal affirmed summary judgment for a landlord against a tenant in a case involving similar facts and a similar lease. *See* 303 Cal.Rptr.3d 863, 866, 87 Cal.App.5th 882, 885. In doing so, the court rejected the tenant's arguments that its obligation to pay rent was excused due to the COVID-19 pandemic by, among other things, the landlord's breach of the lease, a force majeure provision and the doctrines of impossibility, impracticability and frustration of purpose. *Id.* at 875. *Poway Crossings*, interpreting the same

---

*Fitness Int'l, LLC*, No. 2021 L 1322 (Cir. Ct. Cook Cnty., Ill., Sept. 30, 2021); *Fitness Int'l LLC v. DDRM Hill Top Plaza L.P.*, 2021 U.S. Dist. LEXIS 202670 at *8 (C.D. Cal., Oct. 20, 2021); *STORE SPE LA Fitness 2013-7 v. Fitness Int'l, LLC*, No. SACV 20-953 JVS (ADSx) (C.D. Cal., June 30, 2021); *Capital v. Fitness Int'l*, No. 20STCV47017 (Cal. Super. Ct., Los Angeles, Nov. 19, 2021); *Charlotte Props. v. Fitness Int'l*, No. 20CHCV00645 (Cal. Super. Ct., Los Angeles, Jan. 12, 2022); *Kb Salt Lake III, LLC v. Fitness Int'l, LLC*, No. 21CHCV00790 (Cal. Super. Ct., Los Angeles, Apr. 5, 2022); *Kids from the Valley IX, LLC v. Fitness Int'l, LLC*, No. 21CHCV00657 (Cal. Super. Ct., Los Angeles, Nov. 15, 2021); *SVAP III Poway Crossings LLC v. LA Fitness Int'l LLC*, No. 37-2020-00016039-CU-BC-CTL (Cal. Super. Ct., San Diego, Sept. 16, 2021); *Fitness Int'l, LLC v. 93 FLRPT, LLC*, No. 2021-CA-3508 (Fla. 12th Judicial Cir. Ct., Manatee, Mar. 31, 2022); *Fitness Int'l, LLC v. VEREIT Real Estate, Inc.*, No. 21-CA-74 (Fla. 13th Judicial Circuit Court, Hillsborough, Aug. 29, 2022). Landlords also provided the unpublished appellate decision, *Fitness Int'l, LLC v. City Center Ventures, LLC*, No. A22-1057 (Minn. Ct. App. 2023). Although a published appellate decision, *Highlands Broadway OPCO, LLC v. Barre Boss LLC*, --- P.3d ---, 2023 WL 308999 (Col. App. Jan. 19, 2023), addresses pandemic-related issues in the context of a commercial lease containing different provisions.

language found in Section 1.9 in the leases in this case, held that "the reasonable interpretation of Section 1.9 is that [the landlord] merely agreed not to restrict Fitness from using the premises in any way permitted under the lease." *Id.* at 871. The court reached that conclusion by also looking to section 8.2, which allowed the tenant to change use of the premises. *Id.*

¶38        *Poway Crossings* also held that a force majeure provision nearly identical to the Marana lease did not excuse payment of rent. *See id.* at 871–72. The court explained that "while [they] agree with [the tenant] that the closure orders are "restrictive laws," [they] do not agree that these laws delayed, hindered, or prevented [the tenant] from performing under the contract." *Id. Poway Crossings* also rejected the tenant's affirmative defenses, explaining "[n]othing about the pandemic or resulting closure orders has made [the tenant's] performance of its obligation to [the landlord] -- paying rent -- impossible." *Id.* at 872. The court refused to adopt temporary frustration of purpose and found that a "temporary government closure of a fitness facility for a period of months when the premises have been leased for more than 19 years -- and the lease term spans more than 23 years total -- does not amount to the kind of complete frustration required for the doctrine to apply." *Id.* at 874; *see also Fitness Int'l, LLC v. Nat'l Retail Props., LP*, --- P.3d --- 2023 WL 2132749 (Wash. Ct. App. Feb. 21, 2023).

## VIII.   Landlords Are Awarded Their Reasonable Attorneys' Fees and Costs Incurred on Appeal.

¶39        Landlords seek their attorneys' fees and costs under Section 22.7 of each lease. Because Landlords are the successful parties on appeal, they are awarded their reasonable attorneys' fees and taxable costs contingent upon their compliance with ARCAP 21.

## CONCLUSION

¶40        The judgment is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA

15