IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

JUSTIN GREGORY MEEK, *Petitioner/Appellant*,

*v.*

JENNA LYNN MEEK, *Respondent/Appellee.*

No. 1 CA-CV 23-0010 FC
FILED 11-14-2023

Appeal from the Superior Court in Maricopa County
No. FN2019-005275
The Honorable Suzanne Nicholls, Judge

**AFFIRMED**

COUNSEL

Dickinson Wright PLLC, Phoenix
By Vail C. Cloar (argued), Dana M. Levy, Alexandra Crandall, & James T. Lawson
*Counsel for Petitioner/Appellant*

The Cavanagh Law Firm, P.A., Phoenix
By Philip C. Gerard (argued) & Nicholas J. Brown
*Counsel for Respondent/Appellee*

---

## OPINION

Judge Paul J. McMurdie delivered the Court's opinion, in which Presiding Judge D. Steven Williams and Judge Samuel A. Thumma joined.

---

**M c M U R D I E**, Judge:

**¶1**　　　　Justin Meek ("Husband") appeals from the decree dissolving his marriage to Jenna Meek ("Wife"). He argues the marital separation agreement terms became unfair because of economic changes in the months between its execution and the superior court's approval. He also argues the court erred by excluding the evidence at the evidentiary hearing that would show that the agreement became inequitable after its execution.

**¶2**　　　　We hold that a court need not divide the community assets equitably when the parties reach their own agreement. *See* A.R.S. § 25-317(A). We also hold that the time to review for unfairness under A.R.S. § 25-317(B) is at the time of the agreement's formation. Thus, we affirm because Husband makes no argument that the contract was unfair when the spouses mutually assented to it. *See Alulddin v. Alfartousi*, 255 Ariz. 436, 442, ¶ 20 (App. 2023) (Defenses to contract formation such as coercion and unconscionability are subject to waiver unless raised in the superior court.).

### FACTS AND PROCEDURAL BACKGROUND

**¶3**　　　　Husband and Wife were married in 2016. Husband works in the mortgage industry, and in 2017, he became a member of a mortgage company, JFQ Lending, Inc. ("Company"). The marital community contributed around $180,000 to purchase a 30 percent interest in the Company.

**¶4**　　　　In 2019, Husband petitioned to dissolve his marriage. During the divorce proceedings, both spouses retained experts to determine the Company's value. After receiving the valuation reports and consulting legal counsel, Husband and Wife attended a private mediation to discuss the division of the community assets. In September 2021, they signed a separation agreement under Arizona Rule of Family Law Procedure ("Rule") 69.

**¶5**          The relevant part of the Rule 69 agreement awarded Husband the community interest in the Company and Wife an equalization payment of $5 million, secured by a promissory note. The promissory note dictated the terms of the equalization payment and required Husband to pledge 7,500 shares of the Company as collateral to secure the note.

**¶6**          Once the parties reached their Rule 69 agreement, the superior court granted a joint request to vacate the scheduled trial. The parties stipulated to continue the matter on the inactive calendar "to finalize their complex settlement documents." The parties also deferred submitting the agreement to the court for approval. *See* Ariz. R. Fam. Law P. 69(b) ("An agreement under this rule is not binding on the court until it is submitted to and approved by the court as provided by law."); *see also* A.R.S. § 25-317(B) ("[T]he terms of the separation agreement, except those providing for the support, legal decision-making and parenting time of children, are binding on the court unless it finds . . . that the separation agreement is unfair.").

**¶7**          By December 2021, the Company learned of the stock pledge component of the Rule 69 agreement and notified Husband he was prohibited from making such a pledge without the Company's supermajority consent. Husband then requested a status conference to determine whether the Company could participate in setting the terms of the stock pledge. The court held the conference in February 2022 and ruled in April 2022.

> The Court was never presented with the parties['] Rule 69 Agreement to review and approve pursuant to Rule 69(b). As such, to date, it has not been approved and adopted by this Court and, therefore, is not binding on this Court. In fact, this Court was unaware of the contents of the parties' Rule 69 Agreement until it was attached to [Wife]'s Memo. However, neither party is asserting that the Rule 69 Agreement is not a valid and binding agreement between them.

As the agreement outlined, the court referred the parties to arbitration to resolve disputed language in the pledge and continued the matter on the inactive calendar until August 2022.

**¶8**          In May 2022, Husband requested an evidentiary hearing in a "Motion to Determine Fairness of Rule 69 Agreement Pursuant to A.R.S. § 25-317(B)." He claimed that "in the eight (8) months since the parties' entered the Agreement (and one (1) year since the last valuation report for

3

[the Company] was prepared) material subsequent events have occurred that have resulted in a significant devaluation of the community's interest in [the Company]." Citing "rising interest rates and general economic changes," Husband alleged that the Company had lost substantial value, so the Rule 69 agreement was now "unfair and inequitable" and must "be deemed unenforceable." Husband also identified that the Rule 69 agreement "only contains specific values for four (4) assets" and therefore the agreement does not "contain enough information to enable the Court to make [a] fairness determination." Husband concurrently requested a stay of the arbitration because "[i]t would be improper and a waste of resources to conduct an arbitration hearing until the enforceability of the parties' agreement is resolved."

**¶9**　　　　Wife responded by arguing that the court did not have the authority to stay the arbitration and did not have to hold an evidentiary hearing to determine the agreement's fairness because the parties already agreed it was fair. Wife also moved to enforce the Rule 69 agreement.

**¶10**　　　　Based on the dispute, the court stayed the arbitration referral and scheduled an evidentiary hearing about the fairness of the agreement and Wife's motion to enforce it. *See* A.R.S. § 25-317(B). Husband asked the court "to clarify . . . with regard to the date the Court will evaluate the parties' Rule 69 Agreement." He elaborated:

> Husband argues that the Court . . . must consider all evidence that exists at the time of the Court's review, including events subsequent to the entry of the Agreement. Wife argues that the Court must evaluate the fairness of the Agreement as of the date it was entered in September [2021] and that it may not consider any subsequent events.

[footnote omitted.]. Husband also requested an extended disclosure period, to continue the hearing for at least 60 days, and to extend the duration of the hearing. Wife opposed the requests and argued that, under *Buckholtz v. Buckholtz*, the superior court could only consider the evidence available around the execution date of the Rule 69 agreement. 246 Ariz. 126, 133, ¶ 24, n.5 (App. 2019) ("We note that on remand, when determining whether the Agreement is unfair, the superior court must look at the time the Agreement was entered.").

**¶11**　　　　Citing *Buckholtz* and *Ertl v. Ertl*, 252 Ariz. 308, 315, ¶ 22 (App. 2021), the superior court ruled that the proper standard was to "look to whether the Rule 69 Agreement was fair as of the date the parties entered

into the agreement." The court denied Husband's requests for a continuance, extended disclosure, and more hearing time.

¶12        After the August 2022 evidentiary hearing, the court found that the parties agreed on all issues when they entered into the Rule 69 agreement:

> In light of the Court's [ruling] . . . rejecting Husband's position that the Court should evaluate the fairness of the parties' Rule 69 Agreement as of the date of attempted enforcement, Husband concedes that the dispute regarding fairness of the parties' Rule 69 Agreement[] is no longer a justiciable issue before this Court.

The court also noted that "by conceding the foregoing points, Husband is not in any way waiving, but expressly reserves, his right to contest the Court's ruling in its [order] . . . including his right to an appeal of the Court's ruling." The court found that the parties had entered into a fair and valid Rule 69 agreement, approved it, and ordered Wife's counsel to draft a formal decree incorporating it.

¶13        The court entered the decree, and Husband appealed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 12-2101(A)(1), and Rule 78.

**DISCUSSION**

¶14        Husband appeals from a consent decree. With limited exceptions, such as mistake or fraud, a party cannot appeal from a judgment to which it consented. ARCAP 1(d) ("Any party *aggrieved* by a judgment may appeal.") (Emphasis added.); *Duwyenie v. Moran*, 220 Ariz. 501, 506, ¶¶ 16-18 (App. 2009) (A party consenting to a judgment waives arguments on appeal challenging it or incorporated interlocutory orders.); *Cofield v. Sanders*, 9 Ariz. App. 240, 242 (1969) (A party that consents to a judgment is not aggrieved and thus may not appeal from it.).

¶15        It is clear from Husband's motions and the August 2022 minute entry that Husband disagreed with the superior court's ruling about when to determine whether the agreement was unfair, and the parties have thoroughly briefed the issues on appeal. As a result, we decline to apply the waiver doctrine and instead address the merits of the arguments. *See Reid v. Reid*, 222 Ariz. 204, 208, ¶ 16 (App. 2009) (Waiver is discretionary, not "an unalterable rule."); *see also City of Tucson v. Clear Channel Outdoor, Inc.*, 209

Ariz. 544, 552, ¶ 33, n.9 (2005) (Waiver is a "rule of prudence, not of jurisdiction.").

**¶16**        We review the superior court's approval of a separation agreement for an abuse of discretion. *See Hutki v. Hutki*, 244 Ariz. 39, 42, ¶¶ 13-14 (App. 2018). But we review the superior court's interpretation of statutes and rules *de novo. Id.* at ¶ 14; *Hornbeck v. Lusk*, 217 Ariz. 581, 582, ¶ 4 (App. 2008).

**¶17**        Husband argues that the superior court erred by (1) failing to determine whether the community assets' division was equitable and (2) declining to consider evidence of unfairness arising after the Rule 69 agreement's execution date.

## A.        The Equitable Division Requirement in A.R.S. § 25-318(A) Only Applies When the Superior Court Divides Community Assets, Not When the Parties' Agreement Divides the Assets.

**¶18**        Husband begins his argument by stating that by statute, a court must divide community property equitably between spouses. *See* A.R.S. § 25-318(A) ("[T]he court shall . . . divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind."). Noting that A.R.S. § 25-317, which governs separation agreements, does not provide an express exception to A.R.S. § 25-318's equity directive, Husband contends the equitable division requirement "controls even when parties enter into settlement agreements regarding [the] division of property." Husband argues that A.R.S. § 25-317(B)'s unfairness assessment must be read with A.R.S. § 25-318, requiring a court to approve a separation agreement only if it is equitable.

**¶19**        Proceeding under this theory, Husband points out that the parties executed the Rule 69 agreement eight months before the court approved it. Because of the claimed change in the Company's value during that time, Husband argues the superior court erred by relying on older valuations and refusing to consider the evidence around the unfairness hearing date. Husband alleges that in doing so, "the court abdicated its duty to divide property equitably, and, in essence, chose to enforce the requirements of A.R.S. § 25-317 over those imposed by A.R.S. § 25-318."

**¶20**        Wife counters that the economic changes over the eight months after the parties' agreement are irrelevant because the Rule 69 agreement precedes and forecloses A.R.S. § 25-318's equity assessment. She contends that the settlement process would be ineffective if divorce settlements had to meet A.R.S. § 25-318's standard. She maintains that

otherwise, parties would have to settle their dispute like a court would decide the issues.

¶21          Wife's argument has merit. Consistent with our holding in *Buckholtz*, we conclude that nothing in A.R.S. § 25-318(A) requires the court to review whether a Rule 69 agreement is equitable. *See Buckholtz*, 246 Ariz. at 131, ¶ 18. Instead, A.R.S. § 25-317(B) mandates that a court review a separation agreement and determine whether it is "unfair."

¶22          Two spouses enter a contract when they execute a Rule 69 separation agreement. *See Buckholtz*, 246 Ariz. at 129, ¶ 10 (citing *Muchesko v. Muchesko*, 191 Ariz. 265, 268 (App. 1997)). Of course, the contract "is not binding *on the court* until it is submitted to and approved by the court," *see* Ariz. R. Fam. Law P. 69(b) (emphasis added), but the agreement may still be "valid and binding *on the parties*" even before court approval, *see* Ariz. R. Fam. Law P. 69(a) (emphasis added). *Cf. Wheeler v. McDonnell Douglas Corp.*, 999 S.W.2d 279, 287 (Mo. App. 1999) ("Parties may bind themselves to obligations which the dissolution court lacks authority to impose."). Thus, although the court must review the agreement to determine whether it is "unfair" under A.R.S. § 25-317(B), the parties remain bound at its execution.

¶23          Under A.R.S. § 25-317(D), the superior court may adopt the agreement in one of two ways. The Rule 69 agreement may "merge" into the court's decree, superseding the agreement's terms. *See In re Marriage of Rojas*, 255 Ariz. 277, 282, ¶ 14 (App. 2023). Or the decree may incorporate the agreement by reference, in which "the agreement retains its independent contractual status and is subject to the rights and limitations of contract law." *Id.* at ¶ 16 (quoting *LaPrade v. LaPrade*, 189 Ariz. 243, 247 (1997)). Whether a separation agreement's terms merge into the decree "depends on the intent of the parties and the dissolution court." *Id.* at ¶ 19. Once the court enters a decree, its property terms are non-modifiable. *See* A.R.S. § 25-317(F).

¶24          To determine which alternative applies, "we look initially to the language of the agreement and the decree." *LaPrade*, 189 Ariz. at 248. Here, the decree stated that the Rule 69 agreement "is approved and incorporated herein . . . but is specifically not merged herein." Because the decree explicitly incorporated the parties' agreement, contract law governs its terms, including the division of assets. *See Buckholtz*, 246 Ariz. at 129, ¶ 10 (citing *MacMillan v. Schwartz*, 226 Ariz. 584, 588, ¶ 12 (App. 2011)).

¶25          Thus, here, A.R.S. § 25-318(A) cannot require the court to "divide the community . . . equitably" because it is not the court that is

dividing the assets in its order—it is the parties in their contract. We decline to expand the scope of the superior court's review such that it may override the terms of a valid and enforceable contract. *See Ertl*, 252 Ariz. at 312, ¶ 12 ("Arizona has long recognized that parties can enter a separation agreement disposing of rights to property as they desire."); *accord* Unif. Marriage and Divorce Act § 306 cmt. (as amended 1973) ("Subsection (b) undergirds the freedom allowed the parties by making clear that the terms of the agreement respecting maintenance and property disposition are binding upon the court unless those terms are found to be unconscionable."); *Wheeler*, 999 S.W.2d at 287.

**¶26** We conclude that the superior court did not err by declining to determine whether the Rule 69 agreement divided the property equitably before accepting it.

**B. Courts Must Evaluate a Rule 69 Agreement's Unfairness Based on Circumstances Existing at the Agreement's Formation.**

**¶27** Husband argues that the proper time to evaluate a Rule 69 agreement's unfairness is at its incorporation date, not its formation. He argues that "[i]t defies logic that an agreement can be ineffective until the time of approval, but must be evaluated for fairness at some earlier date." He, therefore, requests that we remand to the superior court and "order the court to assess the fairness of the agreement as of the date of dissolution and division of the property."

**¶28** First, we reject his premise that the agreement is "ineffective until the time of approval." As explained above, the parties are bound by the agreement at its formation, even if the formal division of assets does not occur until the court incorporates the agreement into the dissolution decree. The mere fact that an agreement is not enforced immediately does not make it any less binding on the parties.

**¶29** Second, as the superior court identified, *Buckholtz* already addressed this question: "[W]hen determining whether the Agreement is unfair, the superior court must look at the time the Agreement was entered." 246 Ariz. at 133, ¶ 24, n.5; *see also Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 84 (1995) ("[T]he question of unconscionability is determined as of the time the contract was made."); A.R.S. § 47-2302(A) (The court may refuse to enforce a contract if it finds "the contract or any clause of the contract to have been unconscionable *at the time it was made*.") (Emphasis added.).

¶30        Husband cites *Ertl* for the proposition that a "separation agreement's unfairness review" takes place "at dissolution." 252 Ariz. at 315, ¶ 22. Husband points out that *Buckholtz* addressed the timing of the superior court's fairness review only in a footnote that "relies upon principles governing unconscionability, not the statutory fairness analysis," suggesting that, between the two cases, *Ertl* is the legal standard that "makes sense."

¶31        But Husband misreads *Ertl*. As Wife points out, *Ertl* resolved a premarital versus separation agreement dispute. *See* 252 Ariz. at 311-12, ¶¶ 3, 6. In *Ertl*, this court was comparing two contracts against one another. By identifying that a separation agreement is properly reviewed for unfairness "at dissolution," *Ertl* did not dispute the holding about the timing of the A.R.S. § 25-317(B) review identified in *Buckholtz*. *See Ertl*, 252 Ariz. at 315, ¶ 22; *see also Buckholtz*, 246 Ariz. at 133, ¶ 24, n.5. The *Ertl* court was not distinguishing between the date of the separation agreement formation and its acceptance by the court. Instead, we clarified that it was proper to review the fairness of the separation agreement "at dissolution" as distinct from the appropriate time for reviewing the *premarital* agreement (i.e., at its formation before the marriage). *See Ertl*, 252 Ariz. at 315, ¶ 22.

¶32        Still, Husband argues *Buckholtz* is not dispositive because it referenced unconscionability principles while A.R.S. § 25-317(B) requires a review for unfairness. Husband notes that the Arizona legislature modeled A.R.S. § 25-317 on the Uniform Marriage and Divorce Act but specifically replaced the word "unconscionable" with "unfair." *Compare* A.R.S. § 25-317(B) *with* Unif. Marriage and Divorce Act § 306(b). Husband asks us to "hew close to the interpretation[s] applied by sister jurisdictions that share similar statutory guidelines[.]" *See, e.g.*, Tex. Fam. Code Ann. § 7.006(b) ("If the court finds that the terms of the written agreement in a divorce or an annulment are just and right, those terms are binding on the court.").[1]

¶33        *Buckholtz* indeed relied on authorities addressing unconscionability, not unfairness, when holding that "when determining

---

[1]        We disagree with Husband that the Texas code is a close analog to A.R.S. § 25-317(B) because the Texas law expressly provides: "The agreement may be revised or repudiated before rendition of the divorce or annulment." Tex. Fam. Code Ann. § 7.006(a). As explained *supra* ¶ 22, this differs from Arizona, where the parties are bound once they form the agreement.

whether the Agreement is unfair, the superior court must look at the time the Agreement was entered." 246 Ariz. at 133, ¶ 24, n.5 (citing *Nelson v. Rice*, 198 Ariz. 563 (App. 2000); A.R.S. § 25-202(C)(2)). Even so, we disagree with Husband that the superior court's reliance on *Buckholtz* was misplaced.

**¶34**      In *Maxwell v. Fidelity Financial Services, Inc.*, our supreme court provided a framework for courts to use when analyzing the "amorphous equitable doctrine" of unconscionability. *See* 184 Ariz. at 88-90. An agreement may be procedurally or substantively unconscionable. *Id.* at 90 (The court rejected the requirement that both aspects be present for a court to find unconscionability.). Procedural unconscionability, the "common-law cousin[] of fraud and duress," may be found by considering "the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible." *Id.* at 89 (citation omitted). Some substantive unconscionability indicators are "contract terms so one-sided as to oppress or unfairly surprise an innocent party" or "an overall imbalance in the obligations and rights imposed by the bargain." *Id.* The listed factors are not exhaustive. *Id.*

**¶35**      *Maxwell* acknowledged that unconscionability arises based on "the circumstances existing at the time of the making of the contract." *See* 184 Ariz. at 88 (quoting *Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 602 (1981)); *see also* A.R.S. § 47-2302(A). The review's timing is because unconscionability concerns the bargaining process. *See Maxwell*, 184 Ariz. at 89 (Procedural unconscionability "mean[s] bargaining did not proceed as it should."); *id.* at 90 ("[S]ubstantive unconscionability really seems to be . . . [evidence] . . . confirming the conclusion that the process of bargaining was itself defective."). Moreover, this court has long reviewed *premarital* agreements for unconscionability when they are entered. *See, e.g.*, *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 11 (App. 2000) (A premarital agreement was not unconscionable partly because Wife received disclosure of property at issue.); *see also* A.R.S. § 25-202(C)(2).

**¶36**      *Maxwell* did not define "unfairness," but it did use the term "unfair" to describe both types of unconscionability. *See* 184 Ariz. at 88 ("Procedural or process unconscionability is concerned with 'unfair surprise.'"); *see id.* at 89 ("Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party."). And though the *Maxwell* court did not conclude that the contract was unconscionable, the court acknowledged that remand was necessary

because there was "evidence of unconscionability" and it "may be possible" that the respondent "intend[ed] 'to extract' *unfair* profits" using the contract. *Id.* at 93 (emphasis added).

**¶37**        Thus, *Buckholtz's* reference to caselaw citing unconscionability is unsurprising because, although unconscionability requires a "more stringent" test than mere unfairness, 246 Ariz. at 131, ¶ 18, n.4, the two tests address the same concerns, *see Nelson*, 198 Ariz. at 567, ¶ 14 (Unconscionability "concerns the actual terms of the contract *and the relative fairness of the parties' obligations*.") (Emphasis added.).[2] Husband provides no caselaw to distinguish between unconscionability and unfairness—other than the citation to *Buckholtz* for the proposition that "fairness is a less stringent standard." At oral argument, Husband acknowledged that the distinction between unconscionability and unfairness is a matter of degree.[3]

---

[2]        Cases in which Arizona courts have disapproved separation agreements on unfairness grounds exhibited substantive and procedural unconscionability. *See, e.g.*, *Hutki*, 244 Ariz. at 43-44, ¶ 23 (Husband controlled all business accounts and financial information before and during divorce litigation, made misrepresentations of value during negotiations, and stood to receive more than two times the value of community assets under the agreement.); *Sharp v. Sharp*, 179 Ariz. 205, 208 (App. 1994) (Wife alleged "undue influence and overbearing tactics," "extreme emotional distress," financial manipulation during the negotiations, and that husband would not communicate with her through counsel.) (superseded on other grounds).

[3]        Other jurisdictions have reached similar conclusions. *See, e.g.*, *Wille v. Sw. Bell Tel. Co.*, 549 P.2d 903, 907 (Kan. 1976) (Unconscionability "is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain."); *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 107 Cal. Rptr. 2d 645, 657 (App. 2001) ("[A] greater degree of substantive unfairness than has been shown here was required before the contract could be found substantively unconscionable."); *Rivera v. Rivera*, 243 P.3d 1148, 1154 (N.M. App. 2010) ("Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or *grossly* unfair.") (Emphasis added.).

¶38        While the difference between unconscionability and unfairness may be relevant to apply A.R.S. § 25-317(B), we decline to explore the distinction's contours because it is not at issue in this appeal. Instead, we need only decide whether A.R.S. § 25-317(B) requires the court to consider the terms of a Rule 69 agreement around the date it conducts the unfairness review. And Husband fails to explain adequately why an unfairness review should be conducted at a different time simply because it requires a lesser showing than unconscionability.

¶39        As this case reflects, the decision to assess a separation agreement's fairness at its formation is also partly a matter of practicality. During negotiations, Husband's expert assessed the fair market value of the community's interest in the Company at around $6.7 million in 2019 and $13.7 million in 2021. Wife's expert reported around a $5 million change in the fair market value between 2019 and 2020. Given the demonstrable variance in the Company's value during a short period, the Company may one day return to its 2021 value—or be worth even more than anticipated at the Rule 69 agreement's formation.

¶40        A line must be drawn to prevent endless litigation over the "unfairness" of the agreement's terms based on when that review occurs. Here, the parties consulted experts with counsel and reached an informed compromise that accounted for the assessment and predictions of the Company's future value at the time of the Rule 69 agreement's formation in 2021. We see no good reason to deviate from reviewing for unfairness at the time when the parties agreed.

¶41        We thus hold that, like a test for unconscionability, courts must review for unfairness under A.R.S. § 25-317(B), considering only the circumstances that existed around the time of the separation agreement's formation. As Husband only claims to have evidence of the Company's value change after the agreement's formation, the court did not err by refusing to consider his evidence at the evidentiary hearing.

**ATTORNEY'S FEES**

¶42        Wife requests her costs on appeal and fees under A.R.S. § 25-324. Per our discretion, we decline to award fees. Wife is entitled to costs upon compliance with ARCAP 21 as the prevailing party.

**CONCLUSION**

¶**43**  We affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA