NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BETTIJO BOUSHLEY HIRSCHI, *Petitioner/Appellee,*

*v.*

HEATH TRAVIS HIRSCHI, *Respondent/Appellant.*

No. 1 CA-CV 23-0625 FC

FILED 08-01-2024

Appeal from the Superior Court in Maricopa County
No. FC2020-053255
The Honorable Paula A. Williams, Judge

**AFFIRMED**

COUNSEL

Davis Miles, PLLC, Mesa
By Melissa F. Benson
*Counsel for Petitioner/Appellee Wife*

Schiefer Law Firm, PLC, Mesa
By Spencer T. Schiefer
*Counsel for Respondent/Appellant Husband*

---

**MEMORANDUM DECISION**

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge Kent E. Cattani and Judge D. Steven Williams joined.

---

**K I L E Y**, Judge:

¶1        In 2020, Heath Hirschi ("Husband") and Bettijo Hirschi ("Wife") entered into a decree (the "Consent Decree") dissolving their marriage. The Consent Decree incorporated the terms of a stipulated Property Settlement Agreement (the "PSA") that, among other things, awarded the former marital residence (the "Residence") to Wife and provided that each party would remain responsible for one-half of the mortgage. Husband later sought relief from that provision of the PSA, asking the superior court to order that Wife alone was responsible for the mortgage. The court denied Husband's request. We affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        The parties were married in 1999. They lived in the Residence with their four minor children until 2020.

¶3        According to Husband, the Residence was subject to a mortgage on which the parties owed "the approximate amount of $405,000.00 as of August 4, 2020." In mid-2020, the parties refinanced the mortgage. Both parties signed the refinancing documents. The prior mortgage loan had an account number ending in -8730, while the new loan had an account number ending in -1240. (The significance of these details will become apparent shortly.)

¶4        The parties separated sometime in 2020. Wife and the parties' children continued to live in the Residence.

¶5        Wife petitioned to dissolve the marriage in October 2020. By the end of the year, the parties had executed agreements resolving all issues in the case. The parties agreed, among other things, that Husband would pay Wife no child support, but would instead pay non-modifiable spousal maintenance of $2,700 per month for a fixed term of years. The parties also executed the PSA in December 2020, allocating marital property and assigning responsibility for marital debts. The PSA provided, for example, that Husband was awarded the community's 2010 GMC Sierra and was

solely responsible for any liens thereon, and Wife was awarded certain other vehicles while being solely responsible for any liens thereon.

¶6            The PSA awarded the Residence to Wife. Schedule C and Schedule D to the PSA, which set forth the debts assigned to Wife and Husband, respectively, contain virtually identical provisions in Paragraph 7 assigning each party responsibility for "[o]ne-half" of the debt secured by the Residence "as of August 4, 2020." The only difference between Schedule C's Paragraph 7 and Schedule D's Paragraph 7 is the mortgage loan account number. Paragraph 7 to Schedule C states that Wife is responsible for

> One half of Debt owed to Mortgage on [the Residence] as of August 4, 2020, account [number ending in -1240] with an approximate balance of $406,500.

¶7            Paragraph 7 to Schedule D, by contrast, states that Husband is responsible for

> One half of Debt owed to Mortgage on [the Residence] as of August 4, 2020, account [number ending -8730] with an approximate balance of $406,500.

¶8            Paragraph 7 to Schedule D contains a handwritten modification, however; the account number ending in -8730 was crossed out and the account number ending in -1240 was handwritten in its place. It is undisputed that Wife made this handwritten modification to Schedule D, although the parties dispute whether Wife made the modification before or after Husband signed the PSA.

¶9            Both parties signed the PSA and initialed each of its schedules, including Schedules C and D, on December 1, 2020. That same day, they signed the Consent Decree, which expressly incorporated the PSA but also provided that the PSA "shall remain a separately enforceable contractual agreement" of the parties. The parties' signatures on the Consent Decree appear directly below the line affirming that the parties' "agreement about division of property and debts is fair and equitable." The superior court entered the Consent Decree in January 2021.

¶10            More than a year and a half later, Husband petitioned to modify the Consent Decree and the PSA in several respects, including the spousal maintenance provision and the provision "stating that [Husband] is assigned one-half of the debt owed on the mortgage" to the Residence. His spousal maintenance obligation should be terminated or reduced, Husband argued, because he "simply cannot afford to continue to pay"

Wife $2,700.00 per month "while trying to meet his current living expenses." Husband further asserted that, despite language to the contrary in the PSA, the parties' intent was that Husband would pay half of the Residence's mortgage only for an unspecified "transitionary period," after which Wife was to assume sole responsibility for the mortgage. Accordingly, Husband asked the court to order Wife to either sell the Residence or "refinance [it] into her name only." Husband also requested modifications to the legal decision-making and parenting time provisions of the Consent Decree.

¶11            Wife moved for summary judgment on Husband's request for relief from his financial obligations under the PSA, arguing that the parties agreed that Husband's spousal maintenance obligation would be non-modifiable and so the court lacked "jurisdiction to modify or terminate" it. Likewise, she argued, the parties "agreed to split the mortgage" on the Residence, and Husband's belated request for relief from that agreement amounted to an improper "attempt[] to appeal the Consent Decree."

¶12            In his response to Wife's motion for summary judgment, Husband argued that he "was hit hard by the COVID recession" and that his ongoing obligation to pay spousal maintenance and half of the Residence's mortgage imposed "a financial hardship" on him "due to circumstances that were out of his control." Husband also changed his position regarding his obligation for the loan secured by the Residence. Although Husband had asserted, in his petition to modify, that he had agreed to pay half of the mortgage loan for a "transitionary period," he now denied that he ever agreed to pay any part of that debt. He explained that when he initialed and signed the PSA and its schedules, Paragraph 7 to Schedule D "listed the loan number for the original [mortgage] loan," *i.e.*, the mortgage loan with an account number ending in -8730. Before submitting the proposed Consent Decree and accompanying documents to the court for entry of judgment, he alleged, Wife surreptitiously "alter[ed] the loan number for the mortgage debt" by crossing out the account number ending in -8730 and writing the account number ending in -1240 by hand in its place.

¶13            After briefing, the superior court granted summary judgment in Wife's favor, finding no "genuine dispute as to any material fact concerning the issues of spousal maintenance and [Husband's] assumption of half of the mortgage pursuant to the [PSA]." The court found, first, that the Consent Decree expressly provides that Husband's spousal maintenance obligation is non-modifiable, reflecting the parties' agreement that, notwithstanding any future change in either party's "financial

situation," "neither the amount nor duration of spousal maintenance would change." The court further determined that, "when reading all of [the PSA's] provisions together, there is no genuine dispute that [Husband] assumed one-half of the mortgage debt owed on" the Residence.

¶14 Husband then filed a motion to set aside the judgment under Arizona Rule of Family Law Procedure 85(d) (the "Rule 85 motion") in which he again alleged that Wife fraudulently altered the PSA after he signed it but before it was submitted to the court. After he signed the PSA, Husband maintained, Wife "unilaterally altered" Paragraph 7 of Schedule D by crossing out account number ending in -8730 and writing, in its place, the account number ending in -1240. By surreptitiously changing the mortgage account number, he argued, Wife "changed" the mortgage debt he "was supposedly agreeing to be responsible for."

¶15 In her response to Husband's Rule 85 motion, Wife denied "conceal[ing] any material facts" or "intend[ing] to mislead the Court in any way." Rather, Wife asserted, the PSA accurately reflected the parties' agreement that Husband would be "responsible for one half of the debt on the mortgage encumbering the marital residence." (Emphasis omitted). Wife explained that, at the time the parties began preparing the Consent Decree in mid-2020, "the loan encumbering the [Residence] was the mortgage loan ending in 8730," with "an approximate balance of $406,500." The account number ending in -1240 was not typed onto Schedules C and D of the PSA, she explained, because "the parties had not yet refinanced the mortgage loan ending in [-8730], and thus the mortgage loan ending in [-1240] did not yet exist." But whether the debt secured by the Residence was identified by the current account number or the old one is "irrelevant," she argued, because "the bottom line is that" Husband agreed to be "responsible for half of the [$406,500] debt" owed on the Residence "at the time the Consent Decree was signed."

¶16 The court denied Husband's Rule 85 motion in August 2023 "[f]or the reasons stated in [Wife's] Response." Husband now appeals. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶17 Husband argues that the superior court abused its discretion by granting Wife's motion for summary judgment and then denying his Rule 85 motion. He does not challenge the court's denial of his request to modify his spousal maintenance obligation but argues that the court erred by denying his request for relief from his obligation to pay half of the loan

secured by the Residence. Requiring him to "pay off half of the remaining mortgage on" the Residence, he insists, is "contrary to the parties' intent."

¶18　　　　We review an order granting summary judgment *de novo*. *See Weitz Co. v. Heth*, 235 Ariz. 405, 409, ¶ 11 (2014). Although a ruling on a motion for relief from judgment is ordinarily reviewed for abuse of discretion, such a ruling is reviewed *de novo* if it turns on a question of law or presents a mixed question of fact and law. *See Ruffino v. Lokosky*, 245 Ariz. 165, 168, ¶ 9 (App. 2018); *see also Robson Ranch Mountains, L.L.C. v. Pinal Cnty.*, 203 Ariz. 120, 125, ¶ 13 (App. 2002) (reviewing rulings *de novo* because they "hinge on mixed questions of law and fact and pure questions of law").

¶19　　　　The interpretation of a dissolution decree is a question of law reviewed *de novo*. *Caswell v. Caswell*, 255 Ariz. 356, 358, ¶ 9 (App. 2023). And a property settlement agreement incorporated into a dissolution decree is governed by contract law. *Buckholtz v. Buckholtz*, 246 Ariz. 126, 129, ¶ 10 (App. 2019). A court therefore interprets such agreements like a contract: *de novo*, reading "[e]ach section . . . in relation to each other to bring harmony, if possible, between all parts of the writing." *Gesina v. Gen. Elec. Co.*, 162 Ariz. 39, 45 (App. 1988).

¶20　　　　The PSA provides that "[t]he parties have agreed that [Wife] will retain the [Residence]" and that Husband "will cooperate with filling out any required paperwork for this transfer of the Residence." Paragraphs 7 of Schedules C and D to the PSA provide in relevant part that each party is responsible for "[o]ne half" of the loan against the Residence which, "as of August 4, 2020," had "an approximate balance of $406,500." Read together, these provisions unambiguously award the Residence to Wife while assigning to each party responsibility for paying one-half of the debt then owed on the mortgage.

¶21　　　　Husband acknowledges that Paragraph 7 of Schedule D to the PSA assigns him responsibility for one-half of the mortgage loan with the account number ending in -8730. He insists, however, that that mortgage loan—which he refers to as "the Old Mortgage"—was satisfied when the parties refinanced the loan in mid-2020. Because the parties refinanced the loan before they signed the PSA, Husband maintains, Paragraph 7 of Schedule D did nothing more than assign him responsibility for half of "the Old Mortgage," *i.e.*, a debt that was "already . . . [paid] off." By "alter[ing] the PSA after [he] signed" it, Husband argues, Wife "caus[ed] [him] to be responsible for" one-half of a different mortgage loan, *i.e.*, the new loan with the account ending in -1240. At a minimum, he argues, the court

should have conducted an evidentiary hearing to resolve the parties' dispute about whether Wife "altered the PSA without his knowledge or consent to make him responsible for one-half of" the debt owed on the Residence at the time the parties signed the PSA.

¶22 In insisting that Paragraph 7 to Schedule D was intended to apply only to the mortgage loan with the account number ending in -8730, Husband essentially argues that this provision assigned him responsibility for paying one half of a loan that was already extinguished through a refinancing before he signed the PSA. To construe Paragraph 7 to Schedule D to assign Husband responsibility for one-half of a non-existent debt would be to interpret the words of Paragraph 7 of Schedule D as having no effect. We will not interpret the PSA or its schedules in a manner that renders any of their provisions meaningless. *See Terrell v. Torres*, 248 Ariz. 47, 49-50, ¶ 14 (2020) (attempting to "give effect to all terms of the contract to avoid any term being rendered superfluous").

¶23 Further, Husband's suggestion that the parties contemplated that Wife would be solely responsible for the debt secured by the Residence, *i.e.*, the loan with the account number ending in -1240, is refuted by the fact that Paragraph 7 of Schedule C of the PSA expressly provides that Wife would be responsible for

> [*o*]*ne half* of Debt owed to Mortgage on [the Residence] as of August 4, 2020, account # [number ending -1240] with an approximate balance of $406,500.

(Emphasis added.) Husband does not deny that he read, understood, and initialed Schedule C, nor does he claim that Wife surreptitiously altered it after he read it. Husband is, therefore, bound by Schedule C's terms. *See Valley Nat'l Bank v. Nat'l Ass'n for Stock Car Auto Racing*, 153 Ariz. 374, 378 n. 2 (App. 1987) (noting that under Arizona law "one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it."). If, as Husband now contends, the parties contemplated that Wife would be *solely* responsible for the debt secured by the Residence, why would the parties agree to Paragraph 7 of Schedule C, which expressly assigns Wife responsibility for only *one-half* of that debt? And who would possibly be responsible for the other half, if not Husband?

¶24 To adopt Husband's proposed construction of Schedules C and D of the PSA would require us to interpret the documents as requiring Wife to pay one-half of the Residence's mortgage, with no one being

assigned responsibility for the other half, while Husband is responsible for paying one-half of a non-existent debt. We will not interpret the schedules to the PSA in such a nonsensical manner. *See Roe v. Austin*, 246 Ariz. 21, 27, ¶ 17 (App. 2018) ("[C]ourts must avoid an interpretation of a contract that leads to an absurd result."). Instead, we agree with the superior court that, when read together, Paragraph 7 of Schedule C and Paragraph 7 of Schedule D can only be reasonably interpreted as imposing on each party responsibility for one-half of the debt secured by the Residence at the time the parties signed the PSA.

**¶25**        Husband argues that whether Wife altered the loan account number listed on Schedule D before or after he signed the PSA was "a contested issue," and therefore the court "erred by denying [his] Rule 85 motion without holding an evidentiary hearing." But a court is not required to hold an evidentiary hearing simply because a party asks for one. On the contrary, a court need not hold an evidentiary hearing unless material facts are in dispute that must be resolved to determine the issue presented. *Cf. Duckstein v. Wolf*, 230 Ariz. 227, 235, ¶ 26 (App. 2012) (discussing when hearings are and are not needed on applications to set aside a judgment); *Atreus Cmtys. Grp. of Ariz. v. Stardust Dev., Inc.*, 229 Ariz. 503, 507, ¶ 15 (App. 2012) (holding that "the trial court did not have to hold an evidentiary hearing" to determine scope of arbitrator's authority under terms of arbitration agreement, in part because "the documents submitted to the court did not present a genuine issue of material fact as to" that issue).

**¶26**        Here, the terms of Schedules C and D, viewed as a whole, make plain that the parties agreed that each would be responsible for one-half of the debt secured by the Residence. Whether, when Husband signed the PSA, Paragraph 7 of Schedule D listed the refinanced loan account number, the prior loan account number, or no loan account number at all is irrelevant, and so no evidentiary hearing was necessary to answer that question.

**¶27**        In support of his position, Husband cites Paragraph 30(a)(i) of the PSA, which, Husband maintains, establishes that "Wife is [solely] responsible" for the mortgage secured by the Residence "despite whatever Schedule C might say."

**¶28**        Paragraph 30 of the PSA reads in relevant part:

30. Debts

a. Wife's Assumption of Debts. Except as otherwise provided herein, Wife shall assume, pay, indemnify, and hold Husband harmless from the following obligations:

i. Any obligation[] . . . that relates to, arises out of, is secured by, or was created to purchase any of the property awarded to Wife in this Agreement[.]

* * *

b. Husband's Assumption of Debts. Except as otherwise provided herein, Husband shall assume, pay, indemnify, and hold Wife harmless from the following obligations:

i. Any obligation[] . . . that relates to, arises out of, is secured by, or was created to purchase any of the property awarded to Husband in this Agreement.

¶29 According to Husband, the disputed mortgage "is an obligation that arises out of and is secured by the [Residence]" within the meaning of Paragraph 30(a)(i), and so that provision of the PSA makes Wife "responsible for the entirety of" the mortgage on the Residence.

¶30 Husband's argument ignores the fact that Paragraph 30(a) of the PSA begins with the phrase "[*e*]*xcept as otherwise provided herein*." Undoubtedly, Paragraph 30(a)(i) of the PSA imposes on Wife sole responsibility for any loan against real or personal property awarded to her that is not otherwise accounted for in the PSA, just as Paragraph 30(b)(i) of the PSA makes Husband solely responsible for any loan against real or personal property awarded to him that is not otherwise accounted for. But because Paragraphs 7 of Schedules C and D expressly govern responsibility for the Residence's mortgage debt, responsibility for that debt comes within the "except as otherwise provided herein" language of Paragraph 30(a) of the PSA. Nothing in Paragraph 30(a) of the PSA overrides or nullifies the provisions of Schedules C and D that require the parties to share equal responsibility for the Residence's mortgage debt. *See Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 12 (App. 2007) ('[W]hen interpreting a decree, we may not assign meaning to one provision which would render other provisions meaningless.").

¶31 In support of his position, Husband asserts that he has contributed nothing toward the mortgage loan's monthly payments since the Consent Decree was entered. The fact that Wife has made the mortgage payments with no help from him, Husband contends, "demonstrat[es] the

parties' original intent and understanding that Husband was not . . . responsible for the mortgage under the PSA."

¶32        We disagree. The fact that Wife has consistently made the mortgage payments with no help from Husband cannot reasonably be construed as an admission by Wife that Husband has no obligation to pay it. A debtor's failure to make required payments does not prove that no debt is owed, and Wife's efforts to keep the mortgage from falling into arrears cannot reasonably be interpreted as an admission that she alone is responsible for the debt.

¶33        Husband also argues that requiring him to be responsible for one-half of the debt owed on the Residence even though it was awarded to Wife would be "a windfall for Wife" and "a highly inequitable division of assets" that is "contrary to A.R.S. § 25-318."

¶34        Section 25-318 provides in part that, with certain exceptions inapplicable here, "the court shall . . . divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind." A.R.S. § 25-318(A). The statute only applies, however, when *the court* divides the marital assets. *See Meek v. Meek*, 539 P.3d 920, 926, ¶ 25 (App. 2023). When, as here, *the parties* allocate the community's assets between themselves by contractual agreement, Section 25-318(A) does not apply. *See id.*

¶35        Section 25-317(B) provides in part that "the terms of [a] separation agreement" are "binding on the court unless it finds . . . that the separation agreement is unfair." Whether a separation agreement is "unfair" is determined by reference to "the circumstances that existed around the time of the separation agreement's formation." *Meek*, 539 P.3d at 928, ¶ 41. Although Husband argued to the superior court that "the COVID recession" caused him "financial hardship," nothing in the record supports a finding that the PSA was unfair *at the time it was entered*. The Consent Decree includes each party's signed affirmation that the "division of property and debts is fair and equitable." Moreover, although the Consent Decree awards the Residence and certain other assets to Wife, the Consent Decree and the PSA allocate numerous financial accounts and items of personal property of unspecified value to Husband, too. Further, the Consent Decree and the PSA assign Wife, as well as Husband, responsibility for paying one-half of certain credit card debts. And although the Consent Decree requires Husband to pay spousal maintenance for a fixed term of years, it relieves Husband of any obligation to pay child

support. Nothing in the record supports a finding that the parties' agreed-upon allocation of marital assets and debts was so one-sided as to be unfair.

**¶36** Husband next asserts that the superior court should have considered the terms of a post-nuptial agreement that the parties signed in March 2019 in anticipation of a possible divorce. According to Husband, the post-nuptial agreement sets forth the parties' "rights and obligations in the event of divorce," and the parties were "operating off" the post-nuptial agreement when they drafted the PSA. Noting that he attached the post-nuptial agreement as an exhibit to his Rule 85 motion, Husband argues that the court erred in interpreting the PSA without considering the terms of the post-nuptial agreement.

**¶37** "[T]he parol evidence rule bars admission of extrinsic evidence" to interpret a written contract if such evidence "varies or contradicts the terms of [the] written contract." *Aztar Corp. v. U.S. Fire Ins.*, 223 Ariz. 463, 478, ¶ 52 (App. 2010). Further, parol evidence is not admissible "if the meaning of a contract can be determined from the four corners of the document and cannot reasonably be construed in more than one sense." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 258 (App. 1983). Because the terms of the PSA unambiguously impose on Husband responsibility for one-half of the debt secured by the Residence, the superior court properly declined to consider Husband's proffered extrinsic evidence as a basis for varying the PSA's terms. *See id.*

**¶38** Noting that his Rule 85 motion included a request for declaratory relief, Husband argues that the court "erred by failing to provide" the requested declaratory judgment. "[T]here are many rights and obligations not addressed in the PSA," he argues, "such as how and when mortgage payments are to be made" and "whether Husband's responsibility is extinguished if and when the current mortgage is paid off." A declaration of his obligations for the mortgage is "needed," he argues, "due to the lack of specificity and gaps in the PSA."

**¶39** Declaratory relief is available to contracting parties to resolve a dispute over their rights and obligations under their agreement. *See* A.R.S. § 12-1832; *see also State v. Mabery Ranch Co.*, 216 Ariz. 233, 242-43, ¶ 37 (App. 2007) ("The purpose of a declaratory judgment action is to obtain a judicial determination of parties' rights and obligations in a controversy prior to one party's breach of those rights."). A court cannot, however, add new provisions to a contract in the guise of a declaratory judgment. *See Isaak v. Massachusetts Indem. Life Ins. Co.*, 127 Ariz. 581, 584 (1981) ("It is not within

11

the power of this court to revise, modify, alter, extend, or remake a contract to include terms not agreed upon by the parties.") (cleaned up).

**¶40** Although the refinancing documents that Husband and Wife signed in mid-2020 are not part of the record in this case, we presume that the terms of those documents set forth the specifics of Husband's payment obligations, including the term of the loan and how often payments are due. If Husband believes that his rights under those documents are unsettled or unclear, he is, of course, free to file an action for declaratory relief that includes the lender as an interested party. *See Connolly v. Great Basin Ins. Co.*, 6 Ariz. App. 280, 284 (App. 1967) (noting that a court cannot grant declaratory relief "unless the action includes all persons who have or claim an interest affected by the declaration") (citation omitted).

**¶41** The specific payment terms of the refinancing documents do not appear in the PSA, however, and so the court had no authority to "declare" them. Instead, the court's authority was limited to declaring the respective rights and obligations of Husband and Wife under the PSA. The court's ruling on Husband's Rule 85 motion rejected his claim that he is not responsible for half of the mortgage on the Residence, thereby resolving the controversy between the parties on that issue. *See Connolly*, 5 Ariz. App. at 120 (recognizing that a declaratory judgment need not be in any particular form "so long as the court actually determines the issues raised by the pleadings") (citation omitted). The court's ruling had the effect of a declaratory judgment, *see id.*, and Husband was entitled to no further declaratory relief in this case.

**¶42** Wife requests an award of attorney fees and costs under Paragraph 39 of the PSA, which provides in part as follows:

> If any party commences any legal or equitable action . . . to enforce any of the provisions of this Agreement, the prevailing party *shall* recover its [*sic*] reasonable attorneys' fees and litigation expenses in doing so. *This paragraph applies*, among other things, *to any action for declaratory relief or for any other form of relief to enforce, interpret, rescind or in any other manner effect* [*sic*] *the provisions of this Agreement*, as well as an action for the breach of this Agreement. *This paragraph further applies to any appellate proceedings that may be brought in connection with such action*. (Emphasis added.)

**¶43** Paragraph 39 of the PSA thus entitles Wife to her requested award. *See Geller v. Lusk*, 230 Ariz. 624, 627-28, ¶ 10 (App. 2012) (noting that

a contractual fee-shifting provision will be enforced according to its terms, as long as amount of fees awarded is "reasonable"). We award Wife reasonable attorney fees and costs upon compliance with ARCAP 21.

**CONCLUSION**

**¶44**        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV